ledgers, journal entries, and other adjustments to the financial statements that are not reflected in formal journal entries; and records such as worksheets and spreadsheets supporting cost allocations, computations, reconciliations, and disclosures." *Id.* at § 326.03  Without question had Defendant ANCHIN observed this most basic of GAAS requirements the Plaintiffs would not have suffered their losses.

79. On or about December 18, 2008, investors in the Frontier Funds received a letter from Defendant BEACON ASSOCIATE MANAGEMENT CORP. informing the affected parties of the Madoff fraud and the intention to "liquidate the fund". See **Exhibit B**

80. On October 31, 2008 Defendant ANCHIN, BLOCK & ANCHIN, LLP provided a statement of account for the Plaintiff SUSAN SALTZ CHARITABLE LEAD ANNUITY TRUST in which it reported a Capital Account in the amount of $2,235,670.00. Following the disclosure of the Madoff fraud, on December 31, 2008, Defendant ANCHIN, BLOCK & ANCHIN, LLP provided a statement of account for the Plaintiff SUSAN SALTZ CHARITABLE LEAD ANNUITY TRUST in which it reported a Capital Account in the amount of $558,597.00, with a Loss of $1,641,403.00. See **Exhibit C**.

81. On October 31, 2008 Defendant ANCHIN, BLOCK & ANCHIN, LLP provided a statement of account for the Plaintiff SUSAN SALTZ DESCENDANT'S TRUST in which it reported a Capital Account in the amount of $3,573,366.00. Following the disclosure of the Madoff fraud, on December 31, 2008, Defendant ANCHIN, BLOCK & ANCHIN, LLP provided a statement of account for the Plaintiff SUSAN SALTZ

DESCENDANT'S TRUST in which it reported a Capital Account in the amount of $894,100, with a Loss of $2,576,388.00. See **Exhibit D**.

82. On or about June 10th, 2009 Defendant OSTROFF, emailed the Plaintiff informing him that, of the moneys through BEACON ANDOVER, approximately 75% was actually invested with Madoff, "and the remaining funds were invested in several other funds, . . ." This communication made clear that a distribution of the moneys not invested with Madoff, and hence not lost, would be distributed to the investors.

83. On August 14th, 2009 Defendant OSTROFF emailed the Plaintiffs that "[t]hey [i.e., BEACON] are working closely with their attorneys *vis-à-vis* the distributions and accounting."

84. On August 27th, 2009 Defendant OSTROFF emailed the Plaintiffs that

> The papers have been filed with the Court on an expedited basis and he [i.e., Defendant DANZIGER] thinks they should have a ruling over the next 60-75 days, at which point, the 25-26% will be distributed immediately (less the 9% holdback for admin, legal and acct'g) per Joel Danziger of Beacon. That's his best guess and opinion.

85. On September 2nd, 2009 Defendant OSTROFF emailed the Plaintiffs again re-iterating that a distribution of assets should be expected

> in the next 60-75 days. If Joel [Danziger] is correct in his estimation, he believes that the funds should be ready for distribution in early to mid November.

86. Plaintiffs have received no further communications from Defendant OSTROFF, and have, needless to say, received not one dime of the funds still held by the Beacon Defendants.

87. The reported combined losses for the Plaintiff Trusts came to $4,217,791.00. The undistributed assets that Beacon supposedly still held onto totaled approximately another million dollars.

## IV. COUNT ONE

### VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 (15 U.S.C. § 78j(b)), AND RULE 10b-5 OF THE SECURITIES AND EXCHANGE COMMISSION (17 C.F.R. § 240.10b-5)

-------------------------------------------------------------

### (Against Defendants First Frontier, LP; Frontier Capital Management, LLC; Mark Ostroff; "FNU" Ostroff; Frontier Advisors Corp.; Beacon Associates LLC I; Beacon Associates Management Corp.; Joel Danziger; Harris Markhoff; The Bank of New York Mellon Corp.; and Ivy Asset Management Corp.)

-------------------------------------------------------------

88. Plaintiff repeats and re-iterates ¶¶ 1 through 87 inclusive as if set forth herein.

89. This Count is asserted against all Defendants and is based upon Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)),[18] and Rule 10b-5 of the Securities and Exchange Commission (17 C.F.R. § 240.10b-5) promulgated thereunder.

90. During the period relevant herein, Defendants directly engaged in a common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly or recklessly

---

[18] 15 U.S.C. § 78j(b) provides as follows,

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
* * *
**(b)** To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

engaged in acts, practices, and courses of business which operated as a fraud and deceit upon the Plaintiffs, and made various deceptive and untrue statements of material fact and omitted to state material facts in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiffs. The purpose and effect of the scheme, plan, and unlawful course of conduct was, among other things, to induce the Plaintiffs to purchase Memberships in the Fund.

91. As a result of the Defendants' conduct, the Fund has been forced into liquidation, and Plaintiffs' investment has been decimated.

92. During the period relevant hereto, the Defendants, pursuant to said scheme, plan, and unlawful course of conduct, knowingly and recklessly issued, caused to be issued, participated in the issuance of, the preparation and issuance of deceptive and materially false and misleading statements to the Plaintiffs as particularized above.

93. In ignorance of the false and misleading nature of the statements described above and the deceptive and manipulative devices and contrivances employed by said Defendants, Plaintiffs relied, to their detriment, on such misleading statements and omissions in purchasing Memberships in the Fund, re-investing in the Fund, and maintaining their accounts with the Fund. Plaintiffs have suffered substantial damages as a result of the wrongs alleged herein in an amount to be proven at trial.

94. By reason of the foregoing, Defendants directly violated Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10(b)-5) in that they:

(a) employed devices, schemes, and artifices to defraud;

(b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

(c) engaged in acts, practices, and a course or courses of business which operated as a fraud and deceit upon Plaintiffs in connection with the acquisitions of Memberships in the Fund.

## V. COUNT TWO

### VIOLATION OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 (15 U.S.C. § 78t-1(a))

**(Against Defendants First Frontier, LP; Frontier Capital Management, LLC; Mark Ostroff; "FNU" Ostroff; Frontier Advisors Corp.; Beacon Associates LLC I; Beacon Associates Management Corp.; Joel Danziger; Harris Markhoff; The Bank of New York Mellon Corp.; and Ivy Asset Management Corp.; John Does 1 - 100)**

95. Plaintiff repeats and re-iterates ¶¶ 1 through 94 inclusive as if set forth herein.

96. This Count is asserted against all Defendants and is based upon Section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78t-1(a)).[19]

---

[19] 15 U.S.C. § 78t-1(a) provides as follows,
(a) Private rights of action based on contemporaneous trading
Any person who violates any provision of this chapter or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information shall be liable in an action in any court of competent jurisdiction to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased (where such violation is based on a sale of securities) or sold (where such violation is based on a purchase of securities) securities of the same class

97. Defendants MARK OSTROFF and "FNU" OSTROFF acted as the controlling parties of the Frontier Defendants; and Defendants JOEL DANZIGER and HARRIS MARKHOFF acted as controlling persons of the Beacon Defendants within the meaning of Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t-1(b) as alleged herein. By virtue of their high level positions, participation in and/or awareness of the Fund's operations, and/or intimate knowledge of the Fund's products, sales, accounting, plans and implementation thereof, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Fund, including the content and dissemination of the various statements that Plaintiffs contend are false and misleading. They also had the ability to prevent the issuance of the statements or cause the statements to be corrected. None of these Defendants acted as they should have and is required by Section 20(a) of the Exchange Act.

98. Defendants MARK OSTROFF and "FNU" OSTROFF acted as the controlling parties of the Frontier Defendants; and Defendants JOEL DANZIGER and HARRIS MARKHOFF acted as controlling persons of the Beacon Defendants within the meaning of Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t-1(b) as alleged herein had direct and supervisory involvement in the day-to-day operations and management of the Fund and, therefore, are presumed to have, or should have, had the power to control or influence the particular statements giving rise to the securities violations as alleged herein, and exercised the same.

99. Similarly, Defendants JOHN DOES 1-100 were in positions of ownership and/or control over the Fund, including the members of the Managing Member's Advisory

Board. By virtue of their high level positions, participation in and/or awareness of the Fund's investments, they had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Fund, including the content and dissemination of some of the statements that Plaintiffs contend are false and misleading, including, without limitation, the described investment strategies of the Fund.

100. Finally, Defendant THE BANK OF NEW YORK MELLON CORP., as the parent company of Defendant IVY ASSET MANAGEMENT CORP., had the power to influence and control and did influence and control the decision making of Ivy Asset Management, including its recommendations regarding the Fund's Managers and the allocation of the Fund's assets.

101. By virtue of their positions as controlling persons, the above-referenced entities, parties and persons, both individually and collectively, are liable pursuant to the Plaintiffs pursuant to Section 20(a) of the 1934 Exchange Act. As a direct and proximate result of their knowing wrongful conduct, Plaintiffs suffered damages in connection with their acquisitions of Memberships in the Fund, and continued participation therein.

## VI. COUNT THREE

### COMMON LAW FRAUD

----------------------------------------------------------------

**(Against Defendants First Frontier, LP, Frontier Capital
Management, LLC, Mark Ostroff, "FNU" Ostroff,
Frontier Advisors Corp., and Anchin Block & Anchin)**

----------------------------------------------------------------

102. Plaintiff repeats and re-iterates ¶¶ 1 through 101 inclusive as if set forth herein.

103. This Count is asserted against Defendants FIRST FRONTIER, LP, FRONTIER CAPITAL MANAGEMENT, LLC, MARK OSTROFF, "FNU" OSTROFF, FRONTIER ADVISORS CORP. and ANCHIN, BLOCK & ANCHIN, LLP, and is based upon the tort of common law fraud.

104. The elements of common law fraud, under New York law, include representation of a material fact, falsity, scienter, deception and injury. See *Channel Master Corp. v. Aluminum Limited Sales, Inc.*, 4 N.Y.2d 403, 407, 176 N.Y.S.2d 259 (1958). See also *Schreiber v. Tire Centers, LLC*, 2005 WL 2293584 at *2 (W.D.N.Y. 2005) (Siragusa, USDJ).

105. Plaintiffs, in reasonable and justifiable reliance upon the statements and representations made by the Defendants FIRST FRONTIER, LP, FRONTIER CAPITAL MANAGEMENT, LLC, MARK OSTROFF, "FNU" OSTROFF, and FRONTIER ADVISORS CORP., as previously set forth herein, purchased Memberships in the Fund. Plaintiffs would not have purchased their Member-ships in the Fund and re-invested their moneys except for their reliance upon the representations made by the aforementioned Defendants in the Offering Memo-randum, and would not have purchased them had they been aware of the material omissions and concealment by the Defendants named herein, and the fact that the named Defendants had entrusted the Plaintiffs' moneys to Madoff-related entities, and the extraordinary risks inherent therein.

106. Furthermore, Defendants FIRST FRONTIER, LP, FRONTIER CAPITAL MANAGEMENT, LLC, MARK OSTROFF, "FNU" OSTROFF, and FRONTIER ADVISORS CORP. failed to reveal a material fact, that being the use of Beacon and its

37

various entities, and through them, Ivy Asset Management and The Bank of New York

Mellon Corp. to funnel moneys to BLMIS. This failure to disclose a material fact

damaged the Plaintiffs by generating additional fees and expenses, creating another layer

to protect the Defendants named in this Count, and constituted

107. At the time the statements and representations were made by the Frontier

Defendants in the Offering Memorandum, the Frontier Defendants knew or should have

known them to be false and intended to deceive Plaintiffs by making such statements and

representations.

108. Similarly, as the Fund's auditor, Defendant ANCHIN, BLOCK & ANCHIN,

LLP knew or should have known that the majority of the Fund's assets were not invested

as set forth in the Offering Memorandum, but invested through Beacon, *et al.*, and in

BLMIS, and other Madoff-related vehicles. ANCHIN, BLOCK & ANCHIN, LLP

nevertheless failed to disclose this material information to the Fund's Members.

109. ANCHIN, BLOCK & ANCHIN, LLP falsely certified the Fund's financial

statements and reports.

110. At the time of the false statements, misrepresentations and omissions set forth

above, each of the First Frontier Defendants and Anchin Block & Anchin intended that

Plaintiffs would act on the basis of the misrepresentations and omissions contained in the

Offering Memorandum in determining whether to initially purchase, make subsequent

investments in, and/or retain Memberships in the Fund. Plaintiffs reasonably relied

thereon to their detriment in making such decisions.

111. Had Plaintiffs known of the material facts that the First Frontier Defendants and Anchin Block & Anchin misrepresented, and the falsity of their statements and representations, Plaintiffs would not have purchased and/or retained their Memberships in the Fund.

112. Plaintiffs, as a result of their purchase of Memberships in the Fund and by reasons of the First Frontier Defendants and Anchin Block & Anchin's wrongful misrepresentations, have sustained damages, suffered material and emotional distress and have lost a substantial part of their respective investments in an amount yet to be fully determined, and to be proven at trial.

113. This failure on the Frontier Defendants' part was intended to deceive, manipulate, or defraud, the Plaintiffs, or, minimally constituted reckless conduct.

114. By reason of the foregoing, the First Frontier Defendants, and Defendant Anchin Block & Anchin are jointly and severally liable to Plaintiffs.

115. The First Frontier Defendants, and Defendant Anchin Block & Anchin's fraudulent acts were willful and wanton and Plaintiffs are entitled to punitive damages.

## VIII. COUNT FOUR

### FRAUDULENT CONCEALMENT

-----------------------------------------------------------
**(Against Defendants First Frontier, LP, Frontier Capital
Management, LLC, Mark Ostroff, "FNU" Ostroff,
Frontier Advisors Corp., and Anchin Block & Anchin)**
-----------------------------------------------------------

116. Plaintiff repeats and re-iterates ¶¶ 1 through 115 inclusive as if set forth herein.

117. The elements of fraudulent concealment, under New York law, are the following:

> (1) relationship between the parties that creates a duty to disclose;
> (2) knowledge of the material facts by the party bound to make such disclosures;
> (3) nondisclosure;
> (4) scienter;
> (5) reliance; and
> (6) damage.

See *Zackiva Communications Corp. v. Horowitz*, 826 F. Supp. 86, 89 (S.D.N.Y. 1993).

118. Plaintiffs, in reasonable and justifiable reliance upon the statements and representations made by the Defendants FIRST FRONTIER, LP, FRONTIER CAPITAL MANAGEMENT, LLC, MARK OSTROFF, "FNU" OSTROFF, and FRONTIER ADVISORS CORP., as previously set forth herein, purchased Memberships in the Fund. Plaintiffs would not have purchased their Member-ships in the Fund and re-invested their moneys except for their reliance upon the representations made by the aforementioned Defendants in the Offering Memorandum, and would not have purchased them had they been aware of the material omissions and concealment by the Defendants named herein, and the fact that the named Defendants had entrusted the Plaintiffs' moneys to Madoff-related entities, and the extraordinary risks inherent therein.

119. Furthermore, Defendants FIRST FRONTIER, LP, FRONTIER CAPITAL MANAGEMENT, LLC, MARK OSTROFF, "FNU" OSTROFF, and FRONTIER ADVISORS CORP. failed to reveal a material fact, that being the use of Beacon and its

40

various entities, and through them, Ivy Asset Management and The Bank of New York Mellon Corp. to funnel moneys to BLMIS. This failure to disclose a material fact damaged the Plaintiffs by generating additional fees and expenses, creating another layer to protect the Defendants named in this Count, and constituted.

120. At the time the statements and representations were made by the Frontier Defendants in the Offering Memorandum, the Frontier Defendants knew, or should have known, them to be false and intended to deceive Plaintiffs by making such statements and representations.

121. Furthermore, the Frontier Defendants knew, or should have known, that the use of a secondary Fund (*i.e.*, the Beacon Defendants and related entities) was of a material nature, and that such fact should have been revealed to the Plaintiffs, and would have materially affected the Plaintiffs decision regarding investment with Frontier, *et al.*

122. The detailed nature of the Offering Memorandum and the Limited Partnership Agreement served to put the Plaintiffs on notice that these constituted the entire terms of the subject investment, and that all decisions regarding investments would be made by the parties named in the aforementioned documents. Nowhere in these documents were Defendants BEACON ASSOCIATES LLC I, BEACON ASSOCIATES MANAGE-MENT CORP., JOEL DANZIGER, HARRIS MARKHOFF, IVY ASSET MANAGE-MENT CORP., and/or THE BANK OF NEW YORK MELLON CORP. ever made reference to, or their existence even hinted at.[20]

---

[20] See **Exhibit A** annexed hereto.

123. The Plaintiffs relied upon the representations of the Frontier Defendants that the sole parties involved were as set forth in the Offering Memorandum and Limited Partnership Agreement.

124. This failure on the Frontier Defendants' part was intended to deceive, manipulate, or defraud, the Plaintiffs, or, minimally constituted reckless conduct.

125. Plaintiffs, furthermore, relied upon the knowingly false statements of the Defendant OSTROFF that they would receive at least a partial distribution of between 24% and 26% of the investment after the Madoff scheme was revealed, based upon the Beacon investments on non-Madoff securities. See ¶¶ 82-86 *supra*.

126. On this basis the Plaintiffs withheld any action relying upon the aforesaid statements of OSTROFF.

127. This failure, too, on the Frontier Defendants' part was intended to deceive, manipulate, or defraud, the Plaintiffs, or, minimally constituted reckless conduct.

128. Furthermore, the Plaintiffs relied upon the professionalism and representations of the Defendants ANCHIN ANCHIN & BLOCK, to make all disclosures in its statements of account, not merely to reference, in a footnote, to the presence of Defendant BEACON ASSOCIATES LLC I.

129. By reason of the foregoing, the First Frontier Defendants, and Defendant Anchin Block & Anchin are jointly and severally liable to Plaintiffs.

130. The First Frontier Defendants, and Defendant Anchin Block & Anchin's fraudulent acts were willful and wanton and Plaintiffs are entitled to punitive damages.

## VIII. COUNT FIVE

### CONSTRUCTIVE FRAUD

------------------------------------------------------------

**(Against Defendants First Frontier, LP, Frontier Capital Management, LLC, Mark Ostroff, "FNU" Ostroff, Frontier Advisors Corp., and Anchin Block & Anchin)**

------------------------------------------------------------

131. Plaintiff repeats and re-iterates ¶¶ 1 through 130 inclusive as if set forth herein.

132. The elements of constructive fraud, under New York law, are the following:

> (1) a representation is made;
>
> (2) the representation deals with a material fact;
>
> (3) the representation is false;
>
> (4) the representation is made with the intent to make the other party rely upon it;
>
> (5) reliance by the other party;
>
> (6) damage; and
>
> (7) the parties are in a fiduciary or confidential relationship.

See *Del Vecchio By Del Vecchio v. Nassau County*, 118 A.D.2d 615, 617-18, 499 N.Y.S.2d 765 (2d Dep't 1986).

See also *Harris v. Key Bank Nat'l Ass'n*, 89 F. Supp.2d 408, 416-17 (W.D.N.Y. 2000).

133. This Count is asserted against Defendants FIRST FRONTIER, LP, FRONTIER CAPITAL MANAGEMENT, LLC, MARK OSTROFF, "FNU" OSTROFF, FRONTIER

ADVISORS CORP. and ANCHIN, BLOCK & ANCHIN, LLP, and is based upon the tort of constructive fraud

134. Plaintiffs, in reasonable and justifiable reliance upon the statements and representations made by the Defendants FIRST FRONTIER, LP, FRONTIER CAPITAL MANAGEMENT, LLC, MARK OSTROFF, "FNU" OSTROFF, and FRONTIER ADVISORS CORP., as previously set forth herein, purchased Memberships in the Fund. Plaintiffs would not have purchased their Member-ships in the Fund and re-invested their moneys except for their reliance upon the representations made by the aforementioned Defendants in the Offering Memorandum, and would not have purchased them had they been aware of the material omissions and concealment by the Defendants named herein, and the fact that the named Defendants had entrusted the Plaintiffs' moneys to Madoff-related entities, and the extraordinary risks inherent therein.

135. Furthermore, Defendants FIRST FRONTIER, LP, FRONTIER CAPITAL MANAGEMENT, LLC, MARK OSTROFF, "FNU" OSTROFF, and FRONTIER ADVISORS CORP. failed to reveal a material fact, that being the use of Beacon and its various entities, and through them, Ivy Asset Management and The Bank of New York Mellon Corp. to funnel moneys to BLMIS. This failure to disclose a material fact damaged the Plaintiffs by generating additional fees and expenses, creating another layer to protect the Defendants named in this Count, and constituted.

136. At the time the statements and representations were made by the Frontier Defendants in the Offering Memorandum, the Frontier Defendants knew, or should have

44

known, them to be false and intended to deceive Plaintiffs by making such statements and representations.

137. Furthermore, the Frontier Defendants knew, or should have known, that the use of a secondary Fund (*i.e.*, the Beacon Defendants and related entities) was of a material nature, and that such fact should have been revealed to the Plaintiffs, and would have materially affected the Plaintiffs decision regarding investment with Frontier, *et al.*

138. The detailed nature of the Offering Memorandum and the Limited Partnership Agreement served to put the Plaintiffs on notice that these constituted the entire terms of the subject investment, and that all decisions regarding investments would be made by the parties named in the aforementioned documents. Nowhere in these documents were Defendants BEACON ASSOCIATES LLC I, BEACON ASSOCIATES MANAGE-MENT CORP., JOEL DANZIGER, HARRIS MARKHOFF, IVY ASSET MANAGE-MENT CORP., and/or THE BANK OF NEW YORK MELLON CORP. ever made reference to, or even hinted at.

139. Furthermore, the Plaintiffs relied upon the professionalism and representations of the Defendants ANCHIN ANCHIN & BLOCK, to make all disclosures in its statements of account, not merely to reference, in a footnote, to the presence of Defendant BEACON ASSOCIATES LLC I.

140. By reason of the foregoing, the First Frontier Defendants, and Defendant Anchin Block & Anchin are jointly and severally liable to Plaintiffs.

141. The First Frontier Defendants, and Defendant Anchin Block & Anchin's

fraudulent acts were willful and wanton and Plaintiffs are entitled to punitive damages.

## VIII. COUNT SIX

### NEGLIGENT MISREPRESENTATION

---------------------------------------------------------------------

**(Against Defendants First Frontier, LP, Frontier Capital
Management, LLC, Mark Ostroff, "FNU" Ostroff,
Frontier Advisors Corp., and Anchin Block & Anchin)**

---------------------------------------------------------------------

142. Plaintiff repeats and re-iterates ¶¶ 1 through 141 inclusive as if set forth herein.

143. Under New York law, the elements of negligent misrepresentation are:

      (1) carelessness in imparting words,

      (2) upon which others were expected to rely,

      (3) upon which they did act or failed to act,

      (4) to their damage, and

      (5) the author must express the words directly, with knowledge

         they will be acted upon, to one whom the author is bound by

         some relation or duty of care.

See *In re Drexel Burnham Lambert Group, Inc.*, 151 B.R. 49, 60 (S.D.N.Y. 1990),

citing to *White v. Guarente*, 43 N.Y.2d 356, 362, 401 N.Y.S.2d 474 (1977).

144. The First Frontier Defendants, and Anchin Block owed to Plaintiffs a duty: (a) to

act with reasonable care in preparing and disseminating the Offering Memorandum and

other representations relied upon by Plaintiffs in deciding to purchase their Membership

interests in the Fund; and (b) to use reasonable diligence in determining the accuracy of

and preparing the information contained in the Offering Memorandum.

145. In addition, Defendant ANCHIN BLOCK & ANCHIN knew that its audited financial reports would be provided to the Fund's Members and potential investors in the Fund and would be relied on by them in making investment decisions concerning the Funds.

146. The First Frontier Defendants, and Anchin Block failed to investigate, confirm, prepare and review, with reasonable care and diligence, the information contained in the Offering Memorandum and other representations, including the audited annual financial statements.

147. Neither the Offering Memorandum nor any other offering material used in soliciting investment in the Fund ever disclosed that a majority of the Fund's assets were ultimately invested with the Beacon Defendants, and the related entities (*i.e.*, Ivy Asset Management and The Bank of New York Mellon Corp.).

148. Nor did the Offering Memorandum nor any other offering material used in soliciting investment in the Fund ever disclose the risks involved in the Madoff investment strategy, notwithstanding its suspect nature, both financially and mathematically.[21]

---

[21] It should be noted that the Offering Memorandum did, in the "Investment Strategies" section, state that

> In the event that the General Partner determines to allocate some or all of the Partnership's assets to one or more investment managers other than Bernard L. Madoff Investment Securities, the General Partners shall provide not less than ninety (90) days prior written notice to the Limited Partners of its intention to do so and each Limited Partner shall have the right to withdraw all or any amount of value from their respective Capital Account as of the last day of the month immediately preceding the month in which the General Partner intends to invest the Partnership's assets with such other investment manager(s).

See Offering Memorandum, Investment Strategies at p. 2, ¶ C.

149. As a direct, foreseeable and proximate result of this negligence, Plaintiffs have sustained damages, suffered mental and emotional distress and have lost a substantial part of their respective investments in an amount yet to be determined and to be proven at trial, but minimally in excess of four million dollars.

150. By reason of the foregoing, Defendants First Frontier, LP, Frontier Capital Management, LLC, Mark Ostroff, "FNU" Ostroff, Frontier Advisors Corp., and Anchin Block & Anchin are jointly and severally liable to Plaintiffs.

151. The First Frontier Defendants, and Defendant Anchin Block & Anchin's fraudulent acts, were of such a reckless and negligent manner such that Plaintiffs are entitled to punitive damages.

## IX. COUNT SEVEN
### BREACH OF FIDUCIARY DUTY
---
**(Against Defendants First Frontier, LP, Frontier Capital Management, LLC, Mark Ostroff, "FNU" Ostroff, Frontier Advisors Corp. and Anchin Block & Anchin)**
---

152. Plaintiff repeats and re-iterates ¶¶ 1 through 151 inclusive as if set forth herein.

153. The Frontier Defendants owed and continue to owe Plaintiffs fiduciary obligations. By reason of their fiduciary relationships, the Frontier Defendants owed and continue to owe Plaintiffs the highest obligation of good faith, fair dealing, loyalty and due care.

---
...Nevertheless, the General Partner never made such a determination, even in the face of numerous and significant "red flags"

48

154. Anchin Block & Anchin, the Fund's auditors, owed and continue to owe Plaintiffs fiduciary duties.

155. As a result of the Defendant FIRST FRONTIER, LP, Defendant FRONTIER CAPITAL MANAGEMENT, LLC., Defendant MARK OSTROFF, Defendant "FNU" OSTROFF, and Defendant ANCHIN, BLOCK & ANCHIN, LLP abrogation of their duties to use due care in the management of the investors' funds, including those of the Plaintiffs, these Defendants have violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith, and supervision owed to Plaintiffs. They acted in bad faith, with gross negligence and with reckless disregard of their obligation to use due care, and employ reasonable and prudent investment standards.

156. As a result of Defendant ANCHIN BLOCK & ANCHIN's failure to adequately investigate the Fund's investments and failure to discover that its assets were invested in a Ponzi-type scheme, with innumerable red flags attached to it, said Defendant has failed to fulfill its fiduciary duty owed to Plaintiffs. ANCHIN BLOCK & ANCHIN acted in bad faith, with gross negligence and with complete and utter disregard of its obligation to use due and prudent care, including, without limitation, ensuring that the Frontier Defendants were investing the Fund's assets in accordance with the Offering Memorandum "objective of seeking optimal risk-adjusted consistent returns that are uncorrelated to the market while taking low risk," and were using reasonable and prudent investment standards.

157. In addition, Defendant ANCHIN BLOCK & ANCHIN breached its fiduciary duties by falsely certifying the Fund's financial statements.

158. As a proximate result of the aforementioned Defendants bad faith breaches of their fiduciary duties, Plaintiffs have sustained damages, suffered mental and emotional distress and have lost most, if not all, of their respective investments in an amount yet to be determined, and to be proven at trial, however, minimally of at least four million dollars.

159. By reason of the foregoing, Defendants First Frontier, LP, Frontier Capital Management, LLC, Mark Ostroff, "FNU" Ostroff, Frontier Advisors Corp., and Anchin Block & Anchin are jointly and severally liable to Plaintiffs.

160. The First Frontier Defendants, and Defendant Anchin Block & Anchin's fraudulent acts, were of such a reckless and negligent manner such that Plaintiffs are entitled to punitive damages.

## X. COUNT EIGHT

### GROSS NEGLIGENCE AND MISMANAGEMENT
---------------------------------------------------------------

**(Against Defendants First Frontier, LP, Frontier Capital
Management, LLC, Mark Ostroff, "FNU" Ostroff,
Frontier Advisors Corp., Anchin Block & Anchin, Beacon Associates
LLC I, Ivy Asset Management Corp., Bank of New York Mellon
Corp., Beacon Associates Management Corp., Joel Danziger, and
Harris Markhoff)**
---------------------------------------------------------------

161. Plaintiff repeats and re-iterates ¶¶ 1 through 160 inclusive as if set forth herein.

162. The Frontier Defendants, Anchin Block & Anchin, the Beacon Defendants, Ivy Asset Management, BONY Mellon and John Does 1-100 were retained by the Fund to

invest Plaintiffs' money in a manner consistent with, the Fund's investment objectives as set forth in the Offering Memorandum.

163. The Frontier Defendants, Anchin Block & Anchin, the Beacon Defendants, Ivy Asset Management, BONY Mellon and John Does 1-100 owed fiduciary duties to the Plaintiffs to conduct, manage and supervise their investments in good faith and with due care. As set forth above the Frontier Defendants, the Beacon Defendants, Ivy Asset Management and John Does 1-100 breached their fiduciary duties to Plaintiffs by acting in bad faith and failing to exercise due care in the performance of their duties as fiduciaries.

164. The Frontier Defendants, Anchin Block & Anchin, the Beacon Defendants, Ivy Asset Management, BONY Mellon and John Does 1-100 should have prevented, through the exercise of reasonable diligence the improper investing of the Fund's assets into Madoff-related vehicles.

165. The Frontier Defendants, Anchin Block & Anchin, the Beacon Defendants, Ivy Asset Management, BONY Mellon and John Does 1-100 authorized approved, participated in, failed to disclose, and improperly concealed the improper conduct described herein.

166. Plaintiffs relied to their detriment on the Frontier Defendants, Anchin Block & Anchin, the Beacon Defendants, Ivy Asset Management, BONY Mellon and John Does 1-100 to discharge their duties as fiduciaries in a reasonable, careful and prudent manner.

167. As a direct and proximate result of result of the gross negligence and misconduct of the Frontier Defendants, Anchin Block & Anchin, the Beacon Defendants, Ivy Asset Management, BONY Mellon and John Does 1-100, Plaintiffs have been harmed. These Defendants are liable to Plaintiffs in an amount yet to be determined and to be proven at trial, however, minimally of at least four million dollars.

168. By reason of the foregoing, Defendants First Frontier, LP, Frontier Capital Management, LLC, Mark Ostroff, "FNU" Ostroff, Frontier Advisors Corp., Anchin Block & Anchin, and Beacon Associates LLC I, Ivy Asset Management Corp., Bank of New York Mellon Corp., Beacon Associates Management Corp., Joel Danziger, and Harris Markhoff are jointly and severally liable to Plaintiffs.

169. The Defendants First Frontier, LP, Frontier Capital Management, LLC, Mark Ostroff, "FNU" Ostroff, Frontier Advisors Corp., Anchin Block & Anchin, and Beacon Associates LLC I, Ivy Asset Management Corp., Bank of New York Mellon Corp., Beacon Associates Management Corp., Joel Danziger, and Harris Markhoff acts were of such a reckless and negligent manner such that Plaintiffs are entitled to punitive damages.

## XI. COUNT NINE

### UNJUST ENRICHMENT

-------------------------------------------------------------
### (Against all Defendants)
-------------------------------------------------------------

170. Plaintiff repeats and re-iterates ¶¶ 1 through 169 inclusive as if set forth herein.

171. As a result of the misconduct detailed herein, the Defendants named herein have reaped substantial fees, dividends and other pecuniary benefits at the expense of the Plaintiffs.

172. Said Defendants have therefore been unjustly enriched and in equity and good conscience require that these Defendants disgorge to the Plaintiffs, all such unjust enrichment in an amount to be determined at trial.

## XII. COUNT TEN

### AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY

-------------------------------------------------------------
### (Against Defendants Beacon Associates LLC I, Ivy Asset Management Corp., Bank of New York Mellon Corp., Beacon Associates Management Corp., Joel Danziger, and Harris Markhoff)
-------------------------------------------------------------

173. Plaintiff repeats and re-iterates ¶¶ 1 through 172 inclusive as if set forth herein

174. The First Frontier Defendant entrusted the Fund's assets, and the Plaintiff's moneys to the custody and care of Defendants Beacon Associates LLC I, Beacon Associates Management Corp., Joel Danziger, and Harris Markhoff.

175. Defendants BEACON ASSOCIATES LLC I, BEACON ASSOCIATES MANAGEMENT CORP., JOEL DANZIGER, and HARRIS MARKHOFF relied upon the Investment Consultant, Defendant Ivy Asset Management which had actual knowledge of the investments Beacon Associates was making on behalf of the Fund. With that knowledge, Ivy Asset Management knew of the fiduciary duty breaches by the Beacon and Frontier defendants, or willfully and knowingly turned a blind eye to substantial evidence of such breaches.

53

176. Defendant IVY ASSET MANAGEMENT CORP. substantially assisted the fiduciary duty breaches of the Beacon Defendants.

177. Similarly, as Ivy Asset Management's parent company, Defendant THE BANK OF NEW YORK MELLON CORP. had knowledge of Ivy Asset Management's investment consulting business, including its consulting the Fund regarding its investment strategy. With that knowledge, BONY Mellon knew of the fiduciary duty breaches of Ivy Asset Management.

178. Plaintiffs have suffered damages proximately caused by Ivy Asset Management's aiding and abetting of the breach of fiduciary duties by the Beacon Defendants, as well as BONY Mellon's aiding and abetting of the breach of fiduciary duties by Ivy Asset Management, in an amount to be proven at trial, however, minimally, at least four million dollars, and likely well over five million dollars, exclusive of interest.

179. Defendants BEACON ASSOCIATES LLC I, BEACON ASSOCIATES MANAGEMENT CORP., JOEL DANZIGER, and HARRIS MARKHOFF, and Defendants IVY ASSET MANAGEMENT CORP. and THE BANK OF NEW YORK MELLON CORP. acted, individually and jointly, in such a wanton and careless manner such that Plaintiffs are entitled to punitive damages.

## XII. COUNT ELEVEN
### BREACH OF ACCOUNTANT'S DUTY; ACCOUNTANT'S MALPRACTICE
### (Against Defendant Anchin Block & Anchin)

180. Plaintiff repeats and re-iterates ¶¶ 1 through 179 inclusive as if set forth herein.

54

181. The Generally Accepted Auditing Standards ("GAAS") set forth the standards of practice for all auditors. *United States v. Arthur Young & Co.*, 465 U.S. 805, 811 (1984). As long as the accountant engages in good faith compliance with the GAAS and with Generally Accepted Accounting Principles ("GAAP") it will have discharged its accountant's professional obligation to act with reasonable care. *Mishkin v. Peat, Marwick, Mitchell & Co.*, 744 F. Supp. 531, 538 (S.D.N.Y. 1990). Any deviations from established practice must be evaluated on what the auditor knew at the time, or should have reasonably known, based upon its expertise and representations, under the circumstances. *In re CBI Holding Co., Inc.*, 2009 WL 4642005 at *6 (S.D.N.Y. 2009) (Wood, USDJ).

182. The Defendant named herein, ANCHIN, BLOCK & ANCHIN, has failed to abide by its established duties under the GAAS, and has committed such malpractice, as set forth below,[22] resulting in harm to the Plaintiffs.

183. GAAS AU § 317 requires that the auditor, based upon its experience and expertise, advise its client[s] of the possibility that illegal and unlawful acts may have been committed by the parties whom it has audited.  See SAS 54, AU §§ 317.02, 317.03.

184. GAAS AU § 333 requires that the auditor, while it may rely upon representations of management, must conduct further investigation "[i]f a representation made by management is contradicted by other audit evidence . . ."  SAS 54, AU § 333.04.

---

[22] The listed violations of the GAAS in the foregoing paragraphs are for illustration purposes only, and are not meant to be exclusive of any other violations of the GAAS by the Defendants ANCHIN BLOCK & ANCHIN.

185. GAAS AU § 316 requires that the auditor, while not trained as an expert in the authentication of documents and documentary evidence, "however, if the auditor believes that documents may not be authentic, he or she should investigate further and consider using the work of a specialist to determine the authenticity." SAS 82, AU § 316.67 n. 29. See also § 316.77.c. Indeed, GAAS AU § 316 contains a detailed "Exhibit", subtitled, "Guidance to Help Prevent, Deter and Detect Fraud". See GAAS AU § 316.86.

186. GAAS AU § 311 requires that the auditor have the requisite expertise and experience to conduct the audit for which it has been engaged. See SAS 22 § 311.15. As such, it should select a team that satisfies the following mandate,

> The selection of the audit team (including, where necessary, the engage-
> ment quality control reviewer) and the assignment of audit work to the
> team members, including *the assignment of appropriately experienced
> team members to areas where there may be higher risks of material
> misstatement.*

GAAS § 311.34. Emphasis added.

187. GAAS AU § 314 requires that the auditor fully understand the entity which it is conducting an audit upon, and its internal controls, so as to "to assess the risk of material misstatement of the financial statements whether due to error or fraud, . . ." SAS 109 § 314.01. This standard continues (for more than forty pages), in significant detail, to set forth the duties of the auditor to utilize the appropriate analytical procedures, experienced audit team, regulatory environment, related business risks, among other factors, so as to be able to detect fraud in its infancy.

56

188. GAAS AU § 318 (SAS 55) requires that the auditor conduct further inquiry and investigation in the event of material misstatements at the financial statement level. For example, this standard, with regard to subsequent audits, provides as follows:

> When performing substantive procedures at an interim date, the auditor may compare and may reconcile information concerning the balance at the period end with the comparable information at the interim date to identify amounts that appear unusual, investigates any such amounts, and may perform substantive analytical procedures or tests of details to test the intervening period.

GAAS 318.62.

As set forth *supra* (see generally ¶¶ 62-67), many investors found that the Madoff investment returns were inconsistent with both market performance in general and with all other similarly situated funds. Nevertheless, Defendant ANCHIN BLOCK & ANCHIN failed to conduct any additional inquiry that would have protected the investors.

189. These abject failures, among many others, on the part of Defendant ANCHIN, BLOCK & ANCHIN created a causal link between the alleged misconduct and the economic harm ultimately suffered by the Plaintiffs (see *In re Vivendi Univeral S.A. Securities Litigation*, 605 F. Supp.2d 586, 595 (S.D.N.Y. 2009)) resulting in the Plaintiffs suffering losses in the millions of dollars.

190. Defendant Anchin Block & Anchin's negligent acts constituting malpractice, thus, so harmed the Plaintiffs such that they are entitled to punitive damages.

### DEMAND FOR RELIEF

WHEREFORE, Plaintiffs do demand and pray for relief as set forth below:

A. Awarding compensatory damages in favor of the Plaintiffs, and against the named Defendants, both jointly and severally, for all damages sustained as a result of the Defendants' wrongdoing (including, but not limited to, the return of all administrative and management fees paid by the limited partners, with interest thereon), in an amount to be proven at trial, including both pre-judgment and post-judgment interest, to the extent and at the rate set forth by law;

B. Awarding punitive damages in favor of the Plaintiffs, and against the named Defendants herein, due to the willful and wanton acts of malfeasance, mis-feasance, and nonfeasance, including the award of both pre-judgment and post-judgment interest, to the extent and at the rate set forth by law;

C. Awarding to the named Plaintiffs all costs and disbursements of this action, including the awarding of reasonable attorney fees, expert fees, and court costs;

D. Finding in favor of the Plaintiffs on Counts One through Eleven inclusive; and

E. Such further relief as this Court shall deem appropriate.

### XIII. JURY TRIAL DEMAND

Pursuant to Rule 38(a), Fed. R. Civ. P., Plaintiffs demand a jury trial on all issues so triable.

Dated: February 3, 2010
White Plains, NY

AITKEN BERLIN LLP

Bernard V. Kleinman, Esq. (BK2715)
Alan D. Berlin, Esq. (ADB1077)
Two Gannett Drive
Suite 418
White Plains, NY 10604
Tel. 914.644.6660
Fax: 914.694.1647
Email: bvkleinman@aitkenberlin.com
        adberlin@aitkenberlin.com
*Attorneys for Plaintiffs JACK SALTZ, as
Trustee of SUSAN SALTZ CHARITABLE
LEAD ANNUITY TRUST, and SUSAN
SALTZ DESCENDANTS TRUST, and
SUSAN SALTZ*

59

## PLAINTIFFS' CERTIFICATION

Jack Saltz ("Saltz") as Trustee of the Trustee of SUSAN SALTZ CHARITABLE LEAD ANNUITY TRUST, and SUSAN SALTZ DESCENDANTS TRUST, together with Susan Saltz, as beneficiary of the aforementioned Trusts, does declare under penalty of perjury of the laws of the United States of America, as to the claims asserted under the federal securities laws, under the claims asserted under the laws of the State of New York, and under the claims asserted under the common law, that:

1. I have reviewed the annexed Complaint and have authorized the commencement of an action on the Plaintiffs part.

2. Plaintiffs did not participate in the purchase of any securities that are the subject of this action at the behest or suggestion of Plaintiff's counsel herein.

3. I declare under penalty of perjury that the foregoing is true and accurate and correct.

Executed this 28 day of January 2010

Jack Saltz, Trustee of
SUSAN SALTZ
CHARITABLE LEAD
ANNUITY TRUST, and
SUSAN SALTZ
DESCENDANTS TRUST

60

# VERIFICATION

I, Jack Saltz, as Trustee of the Trustee of SUSAN SALTZ CHARITABLE LEAD ANNUITY TRUST, and SUSAN SALTZ DESCENDANTS TRUST, do hereby verify that I am familiar with the allegations in the annexed Complaint, and that I have authorized the filing of this Complaint  Based upon the investigation of my Counsel, the allegations in the annexed Complaint are true to my knowledge, information and belief.  I declare, under penalty of perjury of the laws of the United States of America, that the foregoing is true and correct.

Dated: January 28, 2010

Jack Saltz, Trustee of
SUSAN SALTZ
CHARITABLE LEAD
ANNUITY TRUST, and
SUSAN SALTZ
DESCENDANTS TRUST