# EXHIBIT A

NAME OF OFFEREE ______________________ NO ________

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM

# FIRST FRONTIER, L.P.

(A Delaware Limited Partnership)

January 18, 1999

THIS IS NOT AN OFFER TO SELL OR A SOLICITATION OF ANY OFFER TO BUY THE INTERESTS DESCRIBED HEREIN IN ANY JURISDICTION TO ANY PERSON TO WHOM IT IS UNLAWFUL TO MAKE SUCH AN OFFER OR SALE.

FIRST FRONTIER, L.P.
A DELAWARE LIMITED PARTNERSHIP

---

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM
FOR THE SALE OF LIMITED PARTNERSHIP INTERESTS ("INTERESTS")
FOR A MINIMUM INVESTMENT OF $1,000,000

---

The Interests offered herein of First Frontier, L.P. a Delaware limited partnership (the "Partnership"), represent Interests in the Partnership which was formed to pool investment funds with the objective of seeking optimal risk-adjusted consistent returns that are uncorrelated to the market while taking low risk. Frontier Capital Management LLC, a Delaware limited liability company (the "General Partner") believes that the objective can be achieved through the investment of the Partnership's assets with one independent investment manager that is engaged in a strategy of purchasing a basket of equity securities included in the S&P 100 (OEX) Index (the "Index") and hedging the basket through the use of options on the Index. There is no assurance that the Partnership's objective will be achieved.

PURCHASE OF THESE SECURITIES INVOLVES CERTAIN RISKS. SEE *"RISK FACTORS"*

CONFLICTS OF INTEREST BETWEEN THE GENERAL PARTNER AND THE PARTNERSHIP AND BETWEEN THE INVESTMENT MANAGER AND THE PARTNERSHIP MAY ARISE IN VARIOUS CIRCUMSTANCES. SEE *"CONFLICTS OF INTEREST"*.

THERE IS NO PUBLIC MARKET FOR THE INTERESTS OFFERED PURSUANT TO THIS CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM ("MEMORANDUM"). A LIMITED PARTNER MAY, HOWEVER, WITHDRAW FROM THE PARTNERSHIP AND RECEIVE PAYMENT FOR THE LIMITED PARTNER'S INTERESTS AS SPECIFIED IN THE LIMITED PARTNERSHIP AGREEMENT OF THE PARTNERSHIP ("PARTNERSHIP AGREEMENT"), A COPY OF WHICH IS ANNEXED HERETO AS EXHIBIT B. SEE "SUMMARY OF CERTAIN PROVISIONS OF THE PARTNERSHIP AGREEMENT - Withdrawals".

The address, telephone and facsimile numbers and e-mail address of the Partnership, General Partner and Manager are:

149 Fifth Avenue, 15th Floor
New York, New York 10010
Telephone: (212) 674-5500
Facsimile: (212) 674-5814

THE SECURITIES AND EXCHANGE COMMISSION ("SEC") HAS NOT PASSED UPON THE MERITS OF PARTICIPATING IN THE PARTNERSHIP NOR HAS THE SEC PASSED UPON THE ADEQUACY OR ACCURACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE. IT IS ANTICIPATED THAT THE OFFERING AND SALE WILL BE EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED ("1933 ACT") AND THE VARIOUS STATE SECURITIES LAWS AND THAT THE PARTNERSHIP WILL NOT BE REGISTERED AS AN INVESTMENT COMPANY UNDER THE INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "ICA") PURSUANT TO AN EXEMPTION PROVIDED BY SECTION 3(c)(7) THEREUNDER.

NO RULINGS HAVE BEEN SOUGHT FROM THE INTERNAL REVENUE SERVICE ("SERVICE") WITH RESPECT TO ANY TAX MATTERS DISCUSSED IN THIS MEMORANDUM. PERSONS AND ENTITIES TO WHICH THIS MEMORANDUM IS DELIVERED ("OFFEREES") ARE CAUTIONED THAT THE VIEWS CONTAINED HEREIN ARE SUBJECT TO MATERIAL QUALIFICATIONS AND SUBJECT TO POSSIBLE CHANGES IN REGULATIONS BY THE SERVICE OR BY CONGRESS IN EXISTING TAX STATUTES OR IN THE INTERPRETATION OF EXISTING STATUTES AND REGULATIONS.

OFFEREES ARE NOT TO CONSTRUE THE CONTENTS OF THIS MEMORANDUM AS LEGAL, TAX OR INVESTMENT ADVICE. OFFEREES SHOULD REVIEW THE PROPOSED TRANSACTIONS WITH THEIR OWN COUNSEL, ACCOUNTANT, BUSINESS AND TAX ADVISER ON WHOSE OPINIONS THEY SHOULD RELY. A REPRESENTATION TO THAT EFFECT IS REQUIRED TO BE MADE BY EACH OFFEREE ACQUIRING AN INTEREST.

THIS IS A PRIVATE PLACEMENT MADE ONLY BY DELIVERY OF A COPY OF THIS MEMORANDUM TO THE OFFEREE WHOSE NAME APPEARS HEREON. THE OFFERING IS MADE ONLY TO OFFEREES THAT QUALIFY AS BOTH: (I) ACCREDITED INVESTORS (AS SUCH TERM IS DEFINED IN RULE 501 OF REGULATION D PROMULGATED BY THE SEC UNDER THE 1933 ACT); AND (II) QUALIFIED PURCHASERS (AS SUCH TERM IS DEFINED IN SECTION 2(a)(51)(A) OF THE ICA AND THE RULES PROMULGATED BY THE SEC THEREUNDER).

THE GENERAL PARTNER RESERVES THE RIGHT TO REFUSE ANY SUBSCRIPTION ON THE BASIS OF ANY OFFEREE'S FAILURE TO MEET THE SUITABILITY CRITERIA DESCRIBED HEREIN OR FOR ANY OTHER REASON. EACH OFFEREE WILL BE REQUIRED TO REPRESENT THAT THE OFFEREE IS ACQUIRING THE INTEREST FOR THE OFFEREE'S OWN ACCOUNT, FOR INVESTMENT PURPOSES ONLY, AND NOT WITH ANY INTENTION OF DISTRIBUTION, RESALE OR TRANSFER OF THE INTEREST, EITHER IN WHOLE OR IN PART, AND NO DISTRIBUTION, RESALE OR TRANSFER OF THE INTEREST WILL BE PERMITTED EXCEPT IN ACCORDANCE WITH THE PROVISIONS OF THE 1933 ACT, THE RULES AND REGULATIONS THEREUNDER, ANY APPLICABLE STATE SECURITIES LAWS AND THE TERMS AND CONDITIONS OF THE PARTNERSHIP AGREEMENT. A LIMITED PARTNER MAY, HOWEVER, WITHDRAW FROM THE PARTNERSHIP AND RECEIVE PAYMENT FOR THE INTERESTS AS SPECIFIED IN THE PARTNERSHIP AGREEMENT. SEE *"SUMMARY OF CERTAIN PROVISIONS OF THE PARTNERSHIP AGREEMENT"*. FURTHER, EACH OFFEREE MUST REPRESENT AND WARRANT THAT THE OFFEREE HAS READ THIS MEMORANDUM AND IS AWARE OF AND CAN AFFORD THE RISKS OF AN INVESTMENT IN THE PARTNERSHIP FOR AN INDEFINITE PERIOD OF TIME. THIS INVESTMENT IS SUITABLE ONLY FOR OFFEREES WHO HAVE ADEQUATE MEANS OF PROVIDING FOR THEIR CURRENT AND FUTURE NEEDS ANS CONTINGENCIES, AND HAVE NO NEED FOR LIQUIDITY IN THIS INVESTMENT. SEE *"SUITABILITY REQUIREMENTS"*.

THIS MEMORANDUM IS SUBMITTED IN CONNECTION WITH THE PRIVATE PLACEMENT OF INTERESTS AND MAY NOT BE REPRODUCED OR USED FOR ANY OTHER PURPOSE. ANY DISTRIBUTION OF THIS MEMORANDUM IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS, IS UNAUTHORIZED. THE OFFEREE, BY ACCEPTING DELIVERY OF THIS MEMORANDUM, AGREES TO RETURN THIS MEMORANDUM AND ALL ENCLOSED DOCUMENTS TO THE GENERAL PARTNER IF THE OFFEREE DOES NOT PURCHASE ANY INTERESTS.

NO OFFERING LITERATURE OR ADVERTISING IN WHATEVER FORM SHALL BE EMPLOYED IN THE OFFERING OF INTERESTS EXCEPT FOR THIS MEMORANDUM.

EACH OFFEREE AND REPRESENTATIVE(S) OF OFFEREE'S, IF ANY, ARE INVITED TO ASK QUESTIONS AND OBTAIN ADDITIONAL INFORMATION FROM THE GENERAL PARTNER CONCERNING THE TERMS AND CONDITIONS OF THE OFFERING, THE PARTNERSHIP, AND ANY OTHER RELEVANT MATTERS (INCLUDING BUT NOT LIMITED TO, ADDITIONAL INFORMATION TO VERIFY THE ACCURACY OF THE INFORMATION SET FORTH HEREIN) TO THE EXTENT THE GENERAL PARTNER POSSESSES SUCH INFORMATION OR CAN ACQUIRE IT WITHOUT UNREASONABLE EFFORT OR EXPENSE. OFFEREES OR THEIR REPRESENTATIVES HAVING QUESTIONS OR DESIRING ADDITIONAL INFORMATION SHOULD CONTACT FRONTIER CAPITAL MANAGEMENT, LLC, ATTENTION: MARK S. OSTROFF.

THIS MEMORANDUM CONTAINS SUMMARIES, BELIEVED BY THE GENERAL PARTNER TO BE ACCURATE, OF CERTAIN TERMS OF CERTAIN DOCUMENTS, BUT REFERENCE IS HEREBY MADE TO THE ACTUAL DOCUMENTS (COPIES OF WHICH ARE ATTACHED HERETO OR ARE AVAILABLE FROM THE GENERAL PARTNER) FOR COMPLETE INFORMATION CONCERNING THE RIGHTS AND

OBLIGATIONS OF THE PARTIES THERETO, AND ALL SUCH SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THIS REFERENCE. ALL DOCUMENTS RELATING TO THIS PRIVATE PLACEMENT WILL BE MADE AVAILABLE TO THE OFFEREE AND THE OFFEREE'S REPRESENTATIVES UPON REQUEST. NO PERSON HAS BEEN AUTHORIZED TO MAKE ANY REPRESENTATIONS OR FURNISH ANY INFORMATION WITH RESPECT TO THE PARTNERSHIP OR THE INTERESTS, OTHER THAN THE REPRESENTATIONS AND INFORMATION SET FORTH IN THIS MEMORANDUM OR OTHER DOCUMENTS OR INFORMATION FURNISHED BY THE GENERAL PARTNER UPON REQUEST, AS DESCRIBED ABOVE.

THE INFORMATION CONTAINED HEREIN IS GIVEN AS OF THE DATE HEREOF AND THIS MEMORANDUM DOES NOT PURPORT TO GIVE INFORMATION AS OF ANY OTHER DATE. NEITHER THE DELIVERY OF THIS MEMORANDUM NOR ANY SALES MADE HEREUNDER SHALL, UNDER ANY CIRCUMSTANCES, CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE MATTERS DISCUSSED HEREIN SINCE THE DATE HEREOF.

**FOR RESIDENTS OF ALL STATES:**

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE ISSUER AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THESE SECURITIES HAVE NOT BEEN RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE 1933 ACT AND THE APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM. INVESTORS SHOULD BE AWARE THAT THEY WILL BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

**FOR FLORIDA RESIDENTS:**

WHERE SALES ARE MADE TO FIVE OR MORE PERSONS IN FLORIDA (EXCLUDING CERTAIN INSTITUTIONAL PURCHASERS DESCRIBED IN SECTION 517.061(7) OF THE FLORIDA SECURITIES AND INVESTOR PROTECTION ACT) "THE ACT"), ANY SUCH SALE MADE PURSUANT TO SECTION 517.061(11) OF THE ACT SHALL BE VOIDABLE BY THE PURCHASER EITHER WITHIN THREE DAYS AFTER THE FIRST TENDER OF CONSIDERATION IS MADE BY SUCH PURCHASER TO THE ISSUER, OR AN AGENT OF THE ISSUER, OR AN ESCROW AGENT OR WITHIN THREE DAYS AFTER THE AVAILABILITY OF THAT PRIVILEGE IS COMMUNICATED TO SUCH PURCHASER, WHICHEVER OCCURS LATER.

**TABLE OF CONTENTS**


| CAPTION | PAGE |
|---|---|
| SUMMARY OF THE OFFERING | A |
| INTRODUCTION | 1 |
| INVESTMENT STRATEGIES | 2 |
| MANAGEMENT | 4 |
| RISK FACTORS | 6 |
| FINANCIAL SUMMARY OF THE OFFERING | 9 |
| CONFLICTS OF INTEREST | 13 |
| INVESTMENT BY TAX EXEMPT ENTITIES — ERISA CONSIDERATIONS | 14 |
| SUITABILITY REQUIREMENTS | 17 |
| SUMMARY OF CERTAIN PROVISIONS OF THE PARTNERSHIP AGREEMENT | 18 |
| CERTAIN FEDERAL INCOME TAX CONSIDERATIONS | 23 |
| INVESTMENT RESTRICTIONS | 29 |

**EXHIBITS**

"A" Subscription Documents

"B" Limited Partnership Agreement

## SUMMARY OF THE OFFERING

The following is only a summary of the information contained in this Memorandum and is qualified in its entirety by other information contained in this Memorandum and by the Partnership Agreement. Offerees should read the entire Memorandum and the Partnership Agreement carefully before making any investment decision regarding the Partnership and should pay particular attention to the information under the headings "*RISK FACTORS*" and "*CONFLICTS OF INTEREST*". In addition, Offerees should consult their own advisers in order to understand fully the consequences of an investment in the Partnership.

**The Partnership** First Frontier, L.P. is a Delaware limited partnership formed in December 1998.

**Investment Objective** The Partnership's objective is to seek optimal risk-adjusted consistent returns that are uncorrelated to the market while taking low risk. The General Partner believes that the objective can be achieved through the investment of the Partnership's assets with the Investment Manager (as defined in this Memorandum) that is engaged in a strategy of purchasing a basket of equity securities included in the Index and hedging the basket through the use of options on the Index. See "*INVESTMENT STRATEGIES*". However, no assurance can be given that the objective will be achieved. The General Partner does not intend itself to invest Partnership funds directly in any securities. By pooling the funds invested by limited partners (the "Limited Partners"; which together with the General Partner shall be referred to as "Partners"), the Limited Partners will be able to obtain the benefit of having their investment managed by the Investment Manager to an extent they may not otherwise be able to obtain.

**General Partner** Frontier Capital Management, LLC, a recently formed Delaware limited liability company. Mark S. Ostroff, is the sole manager and principal member of the General Partner. The General Partner has sole and complete authority to manage the Partnership's operations and activities. See "*MANAGEMENT — General Partner*".

**Manager** The Manager of the Partnership is Frontier Advisors Corp. (the "Manager"), a recently formed Delaware corporation. Mr. Ostroff is the President and the sole director and shareholder of the Manager. The Manager will aid and assist the General Partner in operating the Partnership.

**Investment Manager** Bernard L. Madoff Investment Securities, which commenced business in 1960. The Investment Manager is a registered broker/dealer under the Securities Exchange Act of 1934, as amended (the "1934 Act"). The General Partner has delegated to the Investment Manager sole and complete authority to mange the assets of the Partnership. SEE "*MANAGEMENT — Investment Manager*".

**Eligible Investors** Interests may be purchased only by Offerees that qualify as both Accredited Investors and Qualified Purchasers. See "*SUITABILITY REQUIREMENTS*".

**Minimum Investment and Admission of Limited Partners**

The required minimum initial capital contribution of a Limited Partner is $1,000,000 (although the General Partner, in its sole and absolute discretion, may accept lesser amounts).

The General Partner expects that additional Limited Partners will be admitted, and additional capital contributions from existing Limited Partners will be accepted, throughout the term of the Partnership. Capital contributions generally will be accepted as of the first day of each month (each month and such other period or periods as the General Partner shall determine, shall each be referred to herein as "Fiscal Period"). There is no minimum or maximum aggregate amount of funds which must be invested in the Partnership. Upon admission of new Limited Partners, unrealized gain or loss as to Partnership assets will be credited to existing Partners and the respective percentage interests of existing and new Limited Partners will be adjusted accordingly. As a result, new Limited Partners will not share in items of income, gain, loss (whether or not realized), or deductions arising before the date of their admission.

**Withdrawals of Capital**

A Limited Partner may withdraw all or any amount of the value of the Limited Partner's capital account as of the last day of each calendar quarter, upon at least thirty (30) days' prior written notice to the Partnership, and at such other times and upon such terms as the General Partner may determine in its sole and absolute discretion. The Partnership currently expects to pay to a withdrawing Limited Partner an amount equal to approximately ninety-five (95%) percent of the value in such Limited Partner's capital account within fifteen (15) days after the applicable withdrawal date. The Partnership currently expects to pay the balance of the amount remaining in a withdrawing Limited Partner's capital account no later than fifteen (15) days after the: (i) determination of capital account balances, for all Partners as of the end of the applicable calendar quarter, for withdrawals made as of the last day of the first three calendar quarters of each year or, (ii) issuance of the December 31 audited financial statements, for withdrawal made as of the last day of each year, as applicable. The Partnership currently expects to pay a Limited Partner who makes a partial withdrawal within fifteen (15) days after the applicable withdrawal date. There are no direct costs associated with a Limited Partner's withdrawal of value from the Partnership. The Partnership may also suspend the payments of withdrawals in certain limited circumstances. See "*SUMMARY OF CERTAIN PROVISIONS OF THE PARTNERSHIP AGREEMENT — Withdrawals*".

**Management Fee**

The Manager will receive in advance a quarter-annual management fee ("Management Fee") of one-eighth (0.125%) percent of each Limited Partner's capital account balance at the beginning of each calendar quarter. A pro rata Management Fee will be charged to Limited Partners on any amounts permitted to be invested during any calendar quarter. No part of the Management Fee will be refunded in the event that a Limited Partner withdraws all or any of the value in the Limited Partner's capital account during a calendar quarter.

**General Partner's Allocation** The General Partner shall have reallocated by credit to its capital account and each Limited Partner shall have reallocated by debit to each Limited Partners capital account an amount equal to ten (10%) percent of each Limited Partner's pro rata share of the net increase in Net Worth (as defined in this Memorandum) for each calendar year, as adjusted for capital contributions and withdrawals made during the calendar year (the "General Partner Allocation"), in addition to the allocation of the balance of income and profits, or losses, to the General Partner based upon its capital account. The General Partner shall receive the General Partner Allocation on all funds permitted to be invested and withdrawn during each calendar year.

In any calendar year in which a Limited Partner is allocated a portion of a decrease in Net Worth, the General Partner Allocation in the succeeding calendar year(s) shall be calculated on the net increase in Net Worth for such Limited Partner for each such succeeding calendar year(s) reduced by an amount equal to such Limited Partner's allocations of any decrease in Net Worth in the preceding calendar year(s) for such Limited Partner (such allocations of decreases, "Loss Carryover") until the aggregate reductions equal the Loss Carryover. In the event, however, that a Limited Partner withdraws funds at a time in which such Limited Partner has a Loss Carryover, the amount of such Loss Carryover at such withdrawal date applicable to such Limited Partner shall be reduced by a percentage equal to 100% multiplied by a fraction, the numerator of which is the amount to be withdrawn from such Limited Partner's capital account, and the denominator of which is the amount in such capital account immediately prior to the withdrawal.

**Allocation of Profit and Loss** To determine how the economic gains and losses of the Partnership will be shared, the Partnership Agreement provides detailed procedures for allocating net income (increases and decreased in Net Worth) to each Partner's capital account. Net income includes all portfolio gains and losses, whether realized or unrealized, plus all other Partnership items of income (such as interest) and less all Partnership expenses. Generally, net income (subject to the General Partner Allocation) and net loss for each Fiscal Period will be allocated to the Partners in proportion to their capital account balances as of the start of each Fiscal Period. Capital account balances will reflect capital contributions, previous allocations of increases and decreases in Net Worth and withdrawals.

**Allocation of Taxable Income and Loss** For income tax purposes, all items of taxable income, gain, loss, deduction and credit will be allocated among the Partners annually in a manner consistent with the economic interests therein. In light of the fact that the Partnership does not intend to make distributions, to the extent the Partnership's investment activities are successful, Limited Partners should expect to incur tax liabilities from an investment in the Partnership without receiving cash distributions with which to pay those liabilities. To obtain cash from the Partnership to pay taxes, if any, Limited Partners will be required to make withdrawals. See "*SUMMARY OF CERTAIN PROVISIONS OF THE PARTNERSHIP AGREEMENT — Withdrawals*".

| | |
|---|---|
| **Expenses** | The Partnership will pay all of its accounting, legal, administrative (which includes, without limitation the expense of determining and maintaining capital account balances and preparation of reports and financial statements) and other operating expenses, including, without limitation, an allocation of expenses paid by the General Partner (e.g., office and equipment rental) and expenses of the offering and sale of Interests for each calendar year (collectively, the "Administrative Expenses") up to a maximum aggregate amount of three-quarter (0.75%) percent (or a prorated amount for the Partnership's last calendar year and on any amounts permitted to be invested and withdrawn during a calendar year) of the Partnership's Net Worth at the end of its calendar year (the "Expense Cap"). To the extent that the Administrative Expenses exceed the Expense Cap in any calendar year, the General Partner shall pay such excess Administrative Expenses. The Partnership will also pay all of its investment charges and expenses (e.g., brokerage commissions, interest on margin accounts, borrowing charges on securities sold short, custodial fees, trustee fees, bank fees, taxes, etc.), all of which are not and shall not be deemed to be Administrative Expenses and are not subject to the Expense Cap. In addition, the Partnership shall pay all organizational costs (which are not and shall not be deemed to be Administrative Expenses and are not subject to the Expense Cap) and expense such costs as permitted by applicable accounting rules. |
| **Risks** | An investment in the Partnership involves significant risks. See "*RISK FACTORS*". |
| **Fiscal Year End** | December 31. |
| **Reports to Limited Partners** | Each Limited Partner will receive: (i) annual audited financial statements, (ii) a quarterly statement of the Limited Partner's capital account and a letter from the General Partner discussing the results of the Partnership for the quarter just ended, and (iii) copies of such Limited Partner's Schedule K-1 to the Partnership's tax returns. |
| **Term** | The Partnership will terminate on December 31, 2040 unless earlier terminated as provided in the Partnership Agreement. |
| **Transferability of Interests** | Interests are not assignable or transferable (except by operation of law) without the prior written consent of the General Partner, which consent may be given or withheld in its sole and absolute discretion. |
| **Partnership Attorneys** | Robinson Silverman Pearce Aronsohn & Berman LLP, New York, NY. |
| **Partnership Accountants** | Arthur Andersen, New York, NY. |
| **How to Subscribe** | Offerees interested in acquiring Interests are required to complete the applicable documents in the Subscription Documents Booklet and return it to the Partnership. Under the terms of the Subscription Agreement and the Partnership Agreement, an Offeree must pay 100% of the Offeree's investment on or prior to the first day of the applicable Fiscal Period by wire transfer of immediately available funds, or by check, subject to collection, payable to the Partnership, in accordance with the instructions set forth in the Section of the Subscription Documents Booklet entitled "*Instructions to Subscribers*". |

## INTRODUCTION

First Frontier, L.P., a Delaware limited partnership (the "Partnership") formed under the Delaware Revised Uniform Limited Partnership Act ("DRULPA") on December 16, 1998, is an investment partnership that pools its Limited Partners' capital contributions with the objective of seeking optimal risk-adjusted consistent returns that are uncorrelated to the market while taking low risk. The General Partner believes that the objective can be achieved through the investment of the Partnership's assets with the Investment Manager that is engaged in a strategy of purchasing a basket of equity securities included in the S&P 100 (OEX) Index (the "Index") and hedging the basket through the use of options on the Index. However, no assurance can be given that the objective will be achieved

The General Partner does not intend itself to invest Partnership funds directly in any securities other than retaining funds not currently being invested with the Investment Manager and investing such funds temporarily in U.S. government obligations, money market accounts or other short term interest being accounts. Substantially all of the Partnership's assets will be invested with the Investment Manager.

The General Partner is Frontier Capital Management, LLC, a Delaware limited liability company. Mr. Ostroff is the sole manager and principal member of the General Partner. As the sole manager of the General Partner, Mr. Ostroff controls all of its operations and activities. The Manager is Frontier Advisors Corp., a Delaware corporation. Mr. Ostroff is the President and the sole director and shareholder of the Manager and, as such, he controls all of its operations and activities. The principal office and telephone and facsimile numbers of the Partnership, General Partner and Manager are 149 Fifth Avenue, 15th Floor, New York, New York 10010, Telephone No. (212) 674-5500 and Facsimile No. (212) 674-5814. The Partnership will terminate on December 31, 2040 unless sooner terminated as provided for in the Partnership Agreement

The Partnership is offering limited partnership interests in the Partnership ("Interests") in a private placement pursuant to Section 4(2) of the 1933 Act and Rule 506 Regulation D promulgated thereunder by the SEC. The Interests will be sold by the General Partner and will be continuously offered in the sole and absolute discretion of the General Partner. No selling commission will be charged. The General Partner, however, in its sole and absolute discretion, may pay sales commissions out of its own assets to eligible persons that introduce prospective Limited Partners to the Partnership. The minimum purchase by any Offeree is $1,000,000; however, the General Partner may, in its sole and absolute discretion, waive the foregoing minimum purchase requirement and may waive and/or modify the Management Fee and General Partner Allocation as to one or more Limited Partners. There are no minimum or maximum amounts that must be invested by all of the Limited Partners in the Partnership, in the aggregate. Existing Limited Partners may subscribe for additional Interests of any amount and prospective Limited Partners will be required to purchase at least $1,000,000 of Interests; however, the acceptance of any additional or new subscription is at the sole and absolute discretion of the General Partner. Interests may only be purchased by Offerees that qualify as both Accredited Investors and Qualified Purchasers.

It is anticipated that within ninety (90) days after the end of each calendar year, audited financial statements for the year will be prepared by the Partnership, audited by the Partnership's independent certified public accountants, and will be distributed to each Limited Partner. Information as to the Limited Partner's distributive share of the Partnership's income, gains, losses and deductions for the year, for Federal income tax purposes, shall be distributed to each Limited Partner as soon as it become available. In addition, each Limited Partner will receive quarterly, a statement of the Limited Partner's capital account, including such Limited Partner's opening balance, capital contributions and withdrawals, if any, net income or loss and ending balance and a letter from the General Partner discussing the results of the Partnership for the quarter just ended.

The Partnership is not registered as an investment company and is not subject to the provisions of the ICA, in reliance upon an exemption for an entity in which all of the beneficial owners are Qualified Purchasers. As an entity relying on the exemption provided by Section 3(c)(7) of the ICA, the Partnership will not be limited by the ICA as to the number of purchasers of Interests (the Partnership, however, will not have greater than four hundred and ninety-nine (499) Partners). The Partnership will comply with the applicable provisions of the Internal Revenue Code of 1986, as amended (the "Code") and the regulations promulgated thereunder to insure that the Partnership is not taxed as a publicly traded partnership pursuant to Treasury Regulations §1.7704 of the Code. The Partnership has also elected to be a Qualified Purchaser. The General Partner is not registered with the SEC as an investment adviser under the IAA.

INVESTMENT STRATEGIES

The Partnership's objective is to seek optimal risk-adjusted consistent returns that are uncorrelated to the market while taking low risk. The General Partner believes that the objective can be achieved through the investment of the Partnership's assets with the Investment Manager that is engaged in a strategy of purchasing a basket of equity securities included in the Index and hedging the basket through the use of options on the Index. However, no assurance can be given that the objective will be achieved. The Investment Manager may not achieve acceptable results and it is possible that losses may be incurred by the Partnership. Furthermore, the Investment Manager may refuse to accept funds from the Partnership and/or require the Partnership to withdraw all or part of the Partnership's funds from the Investment Manager.

Set forth below is a description of the Investment Manager's strategy:

A. Basket of Long S&P 100 (OEX) Index Securities Hedged by Options on the Index. This investment strategy involves the purchase of a basket of common stocks included in the Index and the simultaneous sale of an Index call option and purchase of an Index put option. In each case, the expiration date of the call option and the put option are identical. All such transactions are undertaken on a hedged basis such that the basket of common stocks purchased correlates significantly with the Index.

This strategy of selling a call against a long position increases income while allowing appreciation to the strike price of the short call. Additional income is earned through the collection of dividends from the equity investments. Finally, the purchase of the put provides downside protection for the underlying securities and is substantially funded by the call premium.

Index options are commonly utilized in this trading methodology. This strategy involves buying a group of equities which in the aggregate highly correlates to the Index. Out-of-the-money Index call options are sold, and out-of-the-money Index put options are purchased, against the long basket of securities. The basket, which typically consists of 30-35 positions, is designed to closely track the performance of the Index without having to purchase all one hundred (100) securities that comprise the Index.

Among the risks involved in the strategy are tracking, market and timing risks. The strategy to be employed by the Investment Manager involves the establishment of a "collar". The collar consists of options on the Index and serves as a hedge against the Partnership's long portfolio. It is possible that the Partnership's portfolio of securities may not perfectly track the performance of the Index. When the price of the Index is within the collar (the difference between the strike prices of the long put and the short call), the Partnership's portfolio is at the risk of the market, which risk is limited to the size of the collar. The size of the collar is typically around 5% to 10% of the value of the Index. A third risk is timing risk. The Partnership's assets will not always be invested so the risk exists that the timing of entry and exit into and out of the market may not be optimal.

B. Other. The General Partner may invest Partnership funds that are not currently allocated to the Investment Manager in short-term U.S. Government securities, money market accounts and/or other short-term interest bearing instruments located at major financial institutions in the United States. Any income earned from such investments will be reinvested by the Partnership in accordance with the Partnership's investment strategies.

C. Potential Change in Investment Manager. In the event that the General Partner determines to allocate some or all of the Partnership's assets to one or more investment managers other than Bernard L. Madoff Investment Securities, the General Partners shall provide not less than ninety (90) days prior written notice to the Limited Partners of its intention to do so and each Limited Partner shall have the right to withdraw all or any amount of value from their respective Capital Account as of the last day of the month immediately preceding the month in which the General Partner intends to invest the Partnership's assets with such other investment manager(s).

THE PARTNERSHIP'S INVESTMENT PROGRAM ENTAILS SUBSTANTIAL RISKS AND THERE CAN BE NO ASSURANCE THAT THE OBJECTIVE OF THE PARTNERSHIP WILL BE ACHIEVED. THE PRACTICES OF SHORT SELLING, LEVERAGE AND OTHER INVESTMENT TECHNIQUES, WHICH THE PARTNERSHIP MAY EMPLOY FROM TIME TO TIME CAN, IN CERTAIN CIRCUMSTANCES, MAXIMIZE THE ADVERSE IMPACT TO WHICH THE PARTNERSHIP'S INVESTMENT PORTFOLIO MAY BE SUBJECT.

MANAGEMENT

The General Partner

The General Partner is responsible for the management of First Frontier, L.P. The General Partner is solely responsible for selecting and monitoring the Investment Manager and making decisions on when and how much to invest with or withdraw from the Investment Manager. The General Partner is Frontier Capital Management, LLC, a Delaware limited liability company formed in 1998. Frontier Capital Management, LLC has no current business other than serving as General Partner of the Partnership. Mr. Ostroff is the sole manager and principal member of the General Partner and Mr. Ostroff's wife is the only other member of the General Partner. She is not involved in any way in the operations or activities of the General Partner or the Partnership. The Manager is Frontier Advisors Corp., a Delaware corporation formed in 1998. Frontier Advisor Corp. has no current business other than serving as Manager of the Partnership. In such capacity, Frontier Advisors Corp. will aid and assist the General Partner in operating the Partnership. Mr. Ostroff is the President and the sole director and shareholder of Frontier Advis ors Corp.

Mr. Ostroff was a Managing Director and head of Private Client Sales at Weiss, Peck & Greer. Prior to that, Mr. Ostroff co-headed the Private Advisory Services Group at Merrill Lynch and directed the High Net Worth Brokerage Group. Mr. Ostroff was a founding partner of Graystone Partners, an alternative investment management firm in Chicago. Earlier in his career, Mr. Ostroff headed the Asia/Pacific Investment Banking Group in Hong Kong for Kidder Peabody, and spent five (5) years providing brokerage and investment services to wealthy family groups and individuals at Goldman Sachs & Co. and Morgan Stanley. He is a CPA and spent four (4) years as a senior tax consultant with Price Waterhouse. Mr. Ostroff earned a BS degree in Economics and Mathematics from the Wharton School of Business at the University of Pennsylvania and an MBA degree in Finance from the University of Chicago Graduate School of Business.

Although nothing in the Partnership Agreement requires the General Partner, Mr. Ostroff or any of their affiliates to devote full time to the Partnership, the General Partner will use its best efforts in connection with the purposes and objectives of the Partnership and to devote such of its time and activity during normal business days and hours as it, in its sole and absolute discretion, deems necessary for the management of the affairs of the Partnership. Mr. Ostroff, as manager of the General Partner and as President of the Adviser, intends to devote such time to the General Partner, Manager and Partnership as he determines in his sole and absolute discretion. The General Partner, Manager and Mr. Ostroff may also directly manage accounts for certain parties and provide consulting and/or advisory services to others.

There have been no administrative, civil or criminal actions, whether pending, on appeal, or concluded, against the Partnership, General Partner, Manager or Mr. Ostroff.

The Investment Manager

Bernard L. Madoff Investment Securities is registered as a broker/dealer under the 1934 Act. The General Partner has selected the Investment Manager to trade, invest and deal in securities and financial instruments for the Partnership. The Investment Manager is a market maker for dealers, banks and institutions. The Investment Manager has locations in New York and London, and makes markets in both listed and unlisted securities. The Investment Manager currently is a market maker for approximately 650 securities. The Investment Manager also trades in convertible bonds, convertible preferred stocks, warrants and listed equity and index options. The Investment Manager began operations in 1960 and has approximately 210 employees.

All trades that the Investment Manager executes on behalf of the Partnership are executed by the Investment Manager, which is a registered broker/dealer, as principal, and the price paid by the Partnership is net of the Investment Manager's markup or markdown. The Investment Manager, in its capacity as a broker-dealer, does not charge the Partnership a brokerage commission for stock transactions. The Investment Manager charges the Partnership a fee of $1.00 per option contract on each trade.

While the Partnership has initially retained Bernard L. Madoff Investment Securities as the Investment Manager, the General Partner, in its sole and absolute discretion, may in the future, on behalf of the Partnership,

retain additional investment managers to manage all or a portion of the Partnership's assets, as the General Partner deems desirable or appropriate. Should the General Partner retain additional or substitute investment managers for the Partnership, there can be no assurance as to the investment strategies, results which may be obtained, or fees or commissions which may be charged by such investment managers.

RISK FACTORS

THE PURCHASE OF INTERESTS OFFERED HEREBY INVOLVES CERTAIN RISKS AND IS SUITABLE ONLY FOR OFFEREES OF ADEQUATE FINANCIAL MEANS WHICH HAVE NO NEED FOR LIQUIDITY IN THIS INVESTMENT. OFFEREES SHOULD BEAR IN MIND THE FOLLOWING RISK FACTORS IN ADDITION TO THE RISK FACTORS SET FORTH IN THE SECTION *"INVESTMENT STRATEGIES"*:

Market Risks

1. Competition. The securities industry, and the varied strategies and techniques engaged in by the Investment Manager are extremely competitive and each involves a degree of risk. The Partnership and the Investment Manager compete with firms, including many of the larger securities and investment banking firms, which have substantially greater financial resources and research staffs.

2. Market Volatility. The profitability of much of the Partnership's capital depends upon the Investment Manager correctly assessing the future price movements of stocks, bonds, options on stocks and other securities and the movements of interest rates. There can be no assurance that the Investment Manager will be successful in accurately predicting price and interest rate movements.

3. Leverage. The Investment Manager may employ leverage. This includes the use of borrowed funds and investments in options, such as puts and calls and warrants. Also, they may engage in short sales. While such strategies and techniques increase the opportunity to achieve higher returns on the amounts invested, they also increase the risk of loss. The level of interest rates generally, and the rates at which such funds may be borrowed in particular, could affect the operating results of the Partnership.

4. Liquidity. Though it is intended that the Investment Manager will trade and invest in securities listed on exchanges, some may be thinly traded. This could present a problem in realizing the prices quoted and in effective trading the position(s). In certain situations, the Investment Manager may invest in illiquid investments which could result in significant loss in value should the Investment Manager be forced to sell the illiquid investments as a result of rapidly changing market conditions or as a result of margins calls or other factors.

5. Independence of Investment Manager. Neither the Partnership nor the General Partner control or will control the Investment Manager, its choice of investments and other investment decisions, all of which are totally within the control of the Investment Manager. The investments of the Partnership will be made by the Investment Manager pursuant to an agreement between the Partnership and the Investment Manager which provides, among other things, guidelines by which the Investment Manager will trade for the Partnership. Thus, while the Investment Manager is bound by a written agreement to follow specified trading strategies, it is possible that the Investment Manager could violate the agreement, which violation could result in a riskier approach that could lead to a loss of all or part of the Partnership's investment.

6. Counterparty Creditworthiness. The Investment Manager may deal in securities and financial instruments for the Partnership that involve counterparties. Under certain conditions, a counterparty to a transaction could default or the market for certain securities or financial instruments may become illiquid. Specifically, some of the options that the Partnership will deal in will be exchange traded and others will be over the counter ("OTC"). The Partnership will use put options to hedge the Partnership's portfolio in the event of market decline. In such an environment, to the extent that one or more OTC counterparties fails to perform, there would be no offset to the decline in value of the Partnership's long positions.

7. Short Sales. The Investment Manager may sell securities short for the Partnership. Selling securities short risks losing an amount greater than the proceeds received. Theoretically, securities sold short are subject to unlimited risk of loss because there is no limit on the price that a security may appreciate before the short position is closed. In addition, the supply of securities that can be borrowed fluctuates from time to time. The Partnership may be subject to losses if a security lender demands return of the lent securities and the Investment Manager is not able to find an alternative lending source.

8. No Segregation of Securities. The Investment Manager is a registered broker-dealer that self clears all securities transactions. As a result, the Investment Manager will hold all of the Partnership's securities and cash. The Investment Manager holds all of its clients' assets and it also conducts significant market making operations as part of its overall business.

Regulatory Risks

1. Principal Transactions. All transactions that the Investment Manager causes the Partnership to engage in are treated as principal transactions.

2. Strategy Restrictions. Certain institutions may be restricted from directly utilizing investment strategies of the type the Partnership may engage in. These may include sales of "naked" options (those in which there is no position in the underlying security) or purchases of put and call options on stocks. Such institutions should consult their own advisers, counsel, and accountants.

3. Trading Limitations. For all securities, including options, listed on a public exchange, the exchange generally has the right to suspend or limit trading under certain circumstances. Such suspensions or limits could render certain strategies difficult to complete or continue and subject the Partnership to loss.

4. No Registration. The Partnership is not registered as an "investment company" under the ICA and neither the General Partner nor the Adviser is registered as an investment adviser under the IAA. Consequently, the Limited Partners will not benefit from certain of the protections afforded by such statutes.

5. Tax Risk. Reference is made to *"CERTAIN FEDERAL INCOME TAX CONSIDERATIONS"* for a discussion of certain tax risks inherent in the acquisition of Interests in the Partnership.

Partnership Risks

1. Limited Liquidity. An investment in the Partnership provides limited liquidity. The Interests are not freely transferable. In connection with the purchase of an Interest pursuant to this Memorandum, each Limited Partner must represent that the Limited Partner has acquired the Interest for investment purposes only and not with a view to or for resale, distribution or fractionalization of the Interest. The Interests have neither been registered under the 1933 Act nor under the securities or "blue sky" laws of any state and, therefore, are subject to transfer restrictions.

2. Withdrawal of Capital. A Limited Partner may withdraw all or any amount of the value of the Limited Partner's capital account as of the last day of each calendar quarter, upon at least thirty (30) days' prior written notice to the Partnership, and at such other times and upon such terms as the General Partner may determine in its sole and absolute discretion. Under certain limited circumstances, the Partnership may suspend the payment of withdrawals.

3. Frequency of Trading. Some of the strategies and techniques employed by the Investment Manager require frequent trades to take place and, as a consequence, portfolio turnover and brokerage commissions may be greater than for other investment entities of similar size.

4. Fees and Expenses. The operating expenses of the Partnership, including the Management Fee and General Partner Allocation, may, in the aggregate, constitute a high percentage relative to other investment entities.

5. Equity Allocation. While the General Partner excepts that the Investment Manager will allocate the Partnership's assets among a number of different securities and financial instruments, there are no fixed allotments.

6. No Participation in Management. The management of the Partnership's operations is vested solely in the General Partner, and the Limited Partners will have no right to take part in the conduct or control of the business of the Partnership. In connection with the management of the Partnership's business, the General

Partner will contribute services to the Partnership and devote thereto such time in its sole and absolute discretion as it deems appropriate.

7. Limitation of General Partner's Liability and Indemnification of the General Partner. The Partnership Agreement provides that the General Partner shall be indemnified against and shall not be liable for, any loss or liability incurred in connection with the affairs of the Partnership, so long as such loss or liability does not involve any gross negligence, willful misconduct or fraud. Therefore, a Limited Partner may have a more limited right of action against the General Partner than a Limited Partner would have had absent these provisions in the Partnership Agreement.

8. Conflicts of Interest. The General Partner and Manager (and/or their affiliates) are not restricted by an agreement not to compete with the Partnership, and the General Partner and Manager (and/or their affiliates) may engage in other activities or ventures which may result in various conflicts of interest between the General Partner and Manager, on the one hand, and the Partnership, on the other hand. Furthermore, the Investment Manager has substantial other businesses which could result in various conflicts of interest.

9. Liability of a Limited Partner for the Return of Capital Distributions. Limited Partners will not be liable under Delaware law for the Partnership's debts, except that a Limited Partner which has received a distribution from the Partnership may be liable to the Partnership for an amount equal to such distribution, if at the time of such distribution the Limited Partner knew that the Partnership was prohibited from making such distributions under the DRULPA.

10. Delayed Schedule K-1s. The General Partner will endeavor to provide a final Schedule K-1 to each Limited Partner for any given calendar year prior to April 15 of the following year. In the event that the Schedule K-1 is not available by such date, a Limited Partner will either have to file for an extension and pay taxes based on an estimated amount or file a return and pay taxes and then file an amended return once the final Schedule K-1 is received.

11. No Operating History; Experience of General Partner. The Partnership is newly formed and has no operating history. The success of the Partnership depends on the ability and experience of the General Partner and Manager, which are both also newly formed with no operating history. Mr. Ostroff, who is the sole manager and principal member of the General Partner, does not have any history of managing investment funds similar to the Partnership and there can be no assurance that the General Partner will generate any income for the Partnership.

12. Lack of Separate Representation. Neither the Partnership Agreement nor any of the agreements, contracts and arrangements between the Partnership and the General Partner were or will be the result of arm's-length negotiations. The attorneys, accountants and others who have performed services for the Partnership in connection with the private placement described in this Memorandum, and who will perform services for the Partnership in the future, have been and will be selected by the General Partner.

13. Other Activities. The management of the Partnership will initially be vested in Mr. Ostroff, the manager of the General Partner, who will devote so much of his time to manage the Partnership as he, in his sole and absolute discretion, deems necessary. Any of the members of the General Partner, and the Manager, may serve as a partner, principal or stockholder of one or more securities firms, broker-dealers, and invest in, have investment responsibilities for, render investment advisory or other services for personal and family accounts, house accounts, managed accounts for individuals or entities, including without limitation, other investment partnerships. The activities of such other entities or accounts may be similar to or may differ from the activities of the Partnership, and neither the Partnership nor the Limited Partners shall have any rights in respect of investments for, and profits or other income earned from, such accounts. See "CONFLICTS OF INTEREST".

FINANCIAL SUMMARY OF THE OFFERING

This summary is qualified in its entirety by the detailed information (including "*RISK FACTORS*" and "*CERTAIN FEDERAL INCOME TAX CONSIDERATIONS*"), appearing in this Memorandum and the Exhibits hereto and the documents referred to herein. All documents referred to herein and not attached hereto are available for inspection during normal business hours at the office of the General Partner upon request by an Offeree.

The Partnership

The Interests in the Partnership offered herein each represent a percentage interest in the Partnership proportionate to the amount invested by each Partner as related to the aggregate amount invested by all Partners. See "*SUMMARY OF CERTAIN PROVISIONS OF THE PARTNERSHIP AGREEMENT — Profits, Losses and Interest in Partnership's Net Worth*".

General Partner

The General Partner of the Partnership is Frontier Capital Management LLC, a Delaware limited liability company. Mr. Ostroff is the sole manager and principal member of the General Partner and, as such, he controls all of the General Partner's operations and activities. See "MANAGEMENT — General Partner."

Manager

The Manager is Frontier Advisors Corp., a Delaware corporation. Mr. Ostroff is the President and the sole director and shareholder of the Manager and he is solely responsible for its operations and activities. The Manager has been formed to aid and assist the General Partner in operating the Partnership.

Terms of Offering

Each Limited Partner must invest a minimum of $1,000,000 (however, the General Partner reserves the right, in its sole and absolute discretion, to admit Limited Partners with less than such minimum investment). There is no minimum or maximum aggregate amount of funds which may be contributed to the Partnership. The General Partner, in its sole and absolute discretion, can accept or reject any additional capital contributions from existing Limited Partners or capital contribution from an Offeree.

The General Partner reserves the right to sell Interests through banks and registered broker-dealers and to pay sales commissions. Any sales commissions will be paid solely by the General Partner, and no portion thereof will be paid by the Partnership (except to the extent that the General Partner is entitled to reimbursement from the Partnership under the Expense Cap).

Offerees and existing Limited Partners may invest in the Partnership as of the beginning of each Fiscal Period, although the General Partner in its sole and absolute discretion has the right to admit new Limited Partners and to accept additional funds from existing Limited Partners at any time. The General Partner, in its sole and absolute discretion, may negotiate the General Partner Allocation and/or Management Fee with certain Limited Partners. All funds invested in the Partnership by Limited Partners will be held in the Partnership's name and the Partnership will not commingle its funds with any other party.