A copy of the subscription documents and instructions for subscribing are attached as Exhibit "A". Each Offeree desiring to acquire an Interest will be required to execute a subscription agreement and other subscription documents to be accompanied by a check made payable to the Partnership representing the Offeree's capital contribution for their Interest. Offerees and Limited Partners may alternatively wire transfer to a bank account in the name of the Partnership their capital contributions for their respective Interests in accordance with the Instructions to Subscribers in Exhibit "A" hereto. Existing Limited Partners making additional capital contributions will be required to execute a one page form confirming certain information previously provided to the Partnership.

Withdrawals

A Limited Partner may withdraw all or any amount of the value of the Limited Partner's capital account as of the last day of each calendar quarter, upon at least thirty (30) days' prior written notice to the Partnership, and at such other times and upon such terms as the General Partner may determine in its sole and absolute discretion. The Partnership currently expects to pay to a withdrawing Limited Partner an amount equal to approximately ninety-five (95%) percent of the value in such Limited Partner's capital account within fifteen (15) days after the applicable withdrawal date. The Partnership currently expects to pay the balance of the amount remaining in a withdrawing Limited Partner's capital account no later than fifteen (15) days after the: (i) determination of capital account balances, for all Partners as of the end of the applicable calendar quarter, for withdrawals made as of the last day of the first three calendar quarters of each year or (ii) issuance of the December 31 audited financial statements, for withdrawal made as of the last day of each year, as applicable. The Partnership currently expects to pay a Limited Partner who makes a partial withdrawal within fifteen (15) days after the applicable withdrawal date. There are no direct costs associated with a Limited Partner's withdrawal of value from the Partnership.

The Partnership may suspend the payment of any withdrawals from capital accounts (i) during the existence of any state of affairs which, in the opinion of the General Partner, makes the determination of the price, value or disposition of the Partnership's investments impractical or prejudicial to the Partners, or (ii) in which withdrawals or distributions, in the opinion of the General Partner, results in violation of applicable law, or (iii) in the event that Limited Partners, in the aggregate, request withdrawals of twenty-five (25%) percent or more the Partnership's Net Worth as of any date of withdrawal. All Limited Partners will be notified of any such suspension, and the termination of any such suspension, by means of a written notice.

Distributions From Profits or Capital

The Partnership does not expect to make any distributions from profits or capital, except pursuant to requests for withdrawals and upon termination of the Partnership. See "*SUMMARY OF CERTAIN TERMS OF THE PARTNERSHIP AGREEMENT—Distributions When Partnership Terminated*" and "*Withdrawals*".

Management Fee

The Manager will receive in advance a quarter-annual management fee ("Management Fee") of one-eighth (0.125%) percent of each of each Limited Partner's capital account balance at the beginning of each calendar quarter. A pro rata Management Fee will be charged to Limited Partners on any amounts permitted to be invested during any calendar quarter. No part of the Management Fee will be refunded in the event that a Limited Partner withdraws all or any of the value in the Limited Partner's capital account during a calendar quarter.

General Partner's Allocation

The General Partner shall have reallocated by credit to its capital account and each Limited Partner shall have reallocated by debit to each Limited Partners capital account an amount equal to ten (10%) percent of each

10

Limited Partner's pro rata share of the net increase in Net Worth (as defined in this Memorandum) for each calendar year, as adjusted for capital contributions and withdrawals made during the calendar year (the "General Partner Allocation"), in addition to the allocation of the balance of income and profits, or losses, to the General Partner based upon its capital account. The General Partner shall receive the General Partner Allocation on all funds permitted to be invested and withdrawn during each calendar year.

In any calendar year in which a Limited Partner is allocated a portion of a decrease in Net Worth, the General Partner Allocation in the succeeding calendar year(s) shall be calculated on the net increase in Net Worth for such Limited Partner for each such succeeding calendar year(s) reduced by an amount equal to such Limited Partner's allocations of any decrease in Net Worth in the preceding calendar year(s) for such Limited Partner (such allocations of decreases, "Loss Carryover") until the aggregate reductions equal the Loss Carryover. In the event, however, that a Limited Partner withdraws funds at a time in which such Limited Partner has a Loss Carryover, the amount of such Loss Carryover at such withdrawal date applicable to such Limited Partner shall be reduced by a percentage equal to 100% multiplied by a fraction, the numerator of which is the amount to be withdrawn from such Limited Partner's capital account, and the denominator of which is the amount in such capital account immediately prior to the withdrawal.

Determination of Partnership's Net Worth

As set forth in Section 9.05 of the Partnership Agreement, the Net Worth of the Partnership is determined in accordance with the following:

"The net worth of the Partnership ("Net Worth") shall be determined on the accrual basis of accounting in accordance with generally accepted accounting principles consistently applied and, further, in accordance with the following:

9.05.01   A determination shall be made on the last day of each calendar year (or Fiscal Period, as the case may be) as to the value of all Partnership assets and as to the amount of liabilities of the Partnership. In making such determination, investments in managed accounts, non-public partnerships and corporations and other non-public investment vehicles shall be valued at their last reported value, updated by any interim valuations provided by the Investment Manager (and/or other Manager(s), if any) of such managed accounts, partnerships, corporations and other investment vehicles, or by any other applicable valuation deemed reasonable by the General Partner. Securities that are listed on a national securities exchange or over-the-counter securities listed on the NASDAQ National Market System, shall be valued at their last sales price on such date, or, if no sales occurred on such date, at the mean between the "bid" and "asked" prices. Securities which are not so listed shall be valued at their last closing "bid" prices if held "long" and at their last closing "asked" prices if held "short". Securities which have no public market shall be considered at such value as the General Partner may reasonably determine. All such valuations shall be made as of the last trading day of each calendar year (or Fiscal Period, as the case may be), and all values assigned to securities by the General Partner pursuant to this Section shall be final and conclusive as to all of the Partners;

9.05.02   There shall be deducted any unpaid Management Fee and actual and estimated Administrative Expenses (subject to the Expense Cap) and such reserves for contingent liabilities of the Partnership, including estimated expenses, if any, in connection therewith, as the General Partner shall determine;

11

9.05.03  The organizational expenses of the Partnership shall be paid by the Partnership and shall be expensed as permitted by applicable accounting rules; and

9.05.04  After the foregoing determinations have been made, a further calculation shall be made to determine the increase or decrease in Net Worth of the Partnership during the calendar year (or Fiscal Period, as the case may be) just ended. The term "increase in Net Worth" shall be the excess of Net Worth at the end of any calendar year (or Fiscal Period, as the case may be) over that of the preceding period, after adjusting for interim Capital Contributions and withdrawals. The term "decrease in Net Worth" shall be the amount by which the Net Worth at the end of the calendar year (or Fiscal Period, as the case may be) is less than the Net Worth of the Partnership as of the end of the preceding calendar year (or Fiscal Period, as the case may be) after making the adjustments specified above."

<u>Expenses</u>

The Partnership will pay all of its accounting, legal, administrative (which includes, without limitation the expense of determining and maintaining capital account balances and preparation of reports and financial statements) and other operating expenses, including, without limitation, an allocation of expenses paid by the General Partner (e.g., office and equipment rental) and expenses of the offering and sale of Interests for each calendar year (collectively, the "Administrative Expenses") up to a maximum aggregate amount of three-quarter (0.75%) percent (or a prorated amount for the Partnership's last calendar year and on any amounts permitted to be invested and withdrawn during a calendar year) of the Partnership's Net Worth at the end of its calendar year (the "Expense Cap"). To the extent that the Administrative Expenses exceed the Expense Cap in any calendar year, the General Partner shall pay such excess Administrative Expenses. The Partnership will also pay all of its investment charges and expenses (e.g., brokerage commissions, interest on margin accounts, borrowing charges on securities sold short, custodial fees, trustee fees, bank fees, taxes, etc.), all of which are not and shall not be deemed to be Administrative Expenses and are not subject to the Expense Cap. In addition, the Partnership shall pay all organizational costs (which are not and shall not be deemed to be Administrative Expenses and are not subject to the Expense Cap) and expense such costs as permitted by applicable accounting rules.

CONFLICTS OF INTEREST

There may be inherent and potential conflicts of interest between the General Partner (and the Manager) and the Partnership, and between the Investment Manager and the Partnership. Among the conflicts which the Offeree should consider are the following:

With Respect to the General Partner and Manager

(a) Neither the General Partner, Manager nor Mr. Ostroff have any obligation to devote their full time to the business of the Partnership. The General Partner, however, is required to devote only such time and attention to the affairs of the Partnership as it deems appropriate, in its sole and absolute discretion. In addition, the General Partner, Manager and Mr. Ostroff may manager other accounts for which they may be compensated and may provide consulting and/or advisory services to others.

(b) The General Partner will determine the allocation of funds from the Partnership and such other accounts to the Investment Manager and others on whatever basis it considers appropriate or desirable, in its sole and absolute discretion.

(c) The General Partner, Manager and/or Mr. Ostroff may manage other accounts and provide investment advice to other parties, and the General Partner, Manager and/or Mr. Ostroff may decide to invest the funds of one or more other accounts or recommend the investment of funds by other parties, rather than the Partnership's funds, with the Investment Manager or others.

(d) The General Partner Allocation may create an incentive for the General Partner to make investments that are riskier or more speculative than would be the case in the absence of such an arrangement.

With Respect to the Investment Manager

(a) The Investment Manager, which is a registered broker-dealer, self clears all transactions. As a result, the Investment Manager will have custody of all of the Partnership's assets.

(b) The Investment Manager currently serves as a market maker for approximately 650 securities. The Investment Manager's activities for the Partnership may be influenced by its market making activities.

(c) The Investment Manager manages numerous other accounts for other parties, many of which have and will have larger assets under management than the Partnership.

(d) The Investment Manager, as a registered broker-dealer, executes all trades as principal, and the price paid or received by the Partnership is net of the Investment Manager's markup or markdown.

13

## INVESTMENT BY TAX EXEMPT ENTITIES -- ERISA CONSIDERATIONS

### General

In considering an investment in the Partnership of a portion of the assets of employee benefit plans subject to Employee Retirement Income Security Act of 1974, as amended ("ERISA"), including IRAs and Keogh plans (hereinafter referred to individually as "Plan" and collectively as "Plans"), fiduciaries and their legal counsel should consider whether: (i) the investment in the Partnership is in accordance with the documents and instruments governing such Plan; (ii) the investment satisfies the diversification requirements of Section 404(a)(1)(C) of ERISA, if applicable; (iii) the investment will result in unrelated business taxable income ("UBTI") to the Plan; (iv) the investment provides sufficient liquidity and is otherwise prudent; and (v) the investment satisfies the need to value the assets of the Plan annually. The required valuations will be available and Plan fiduciaries must make their own determination regarding whether an investment in the Partnership is prudent under ERISA, taking into consideration the specific facts and circumstances of the Plan and an investment in the Partnership.

ERISA generally requires that the assets of employee benefit plans be held in trust and that the trustee, or a duly authorized investment manager (within the meaning of Section 3(38) of ERISA), have exclusive authority and discretion to manage and control the assets of the Plan. ERISA also imposes certain duties on persons who are fiduciaries of employee benefit plans subject to ERISA and prohibits certain transactions between an employee benefit plan and the fiduciaries of such plan. Under the Internal Revenue Code of 1986, as amended ("Code"), similar prohibitions apply to all Plans which are not subject to ERISA. Under ERISA and the Code, any person who exercises any discretionary authority or discretionary control respecting the management or disposition of the assets of a Plan or who renders investment advice for a fee to a Plan is considered to be a fiduciary of such Plan (subject to certain exceptions not here relevant). Each Plan Limited Partner who so requests will be issued a certificate evidencing its interest in the Partnership. The possession of such indicia of ownership should satisfy the holding in trust requirements of ERISA.

Furthermore, ERISA and the Code prohibit fiduciaries of a Plan from engaging in various acts of self-dealing. In order to prevent the General Partner from being a fiduciary with respect to any Plan which invests in the Partnership, the General Partner will not permit an investment in the Partnership with assets of any Plan (including a Keogh plan or IRA) if the General Partner (i) has investment discretion with respect to such assets or (ii) regularly gives individualized investment advice which serves as the primary basis for the investment decisions made with respect to such assets.

### Plan Asset Rules

If, by virtue of a Plan's purchase of an Interest in the Partnership, the assets of the Partnership are deemed to be "plan assets" under ERISA, then: (i) the exclusive benefit rule and other fiduciary rules of ERISA may bind the General Partner; and (ii) certain other transactions in which the Partnership may engage may constitute prohibited transactions under Section 406 of ERISA and Section 4975(a) of the Code. ERISA does not define what assets will be deemed to be plan assets.

In 1975, the Department of Labor issued ERISA Interpretive Bulletin 75-2, 29 C.F.R. §2509.75-2 ("IB 75-2"), which first addressed the plan asset issue. In IB 75-2, the Department of Labor took the position that the assets of a corporation or partnership in which a qualified plan invested should not generally be treated as assets of such plan:

> Generally, investment by a plan in securities (within the meaning of Section 3(20) of the Employee Retirement Income Security Act of 1974) of a corporation or partnership will not, solely by reason of such

14

investment, be considered to be an investment in the underlying assets of such corporation or partnership so as to make such assets of the entity "plan assets" and thereby make a subsequent transaction between the party in interest and the corporation or partnership a prohibited transaction under Section 406 of the Act.

On November 13, 1986, the Department of Labor published its final Regulations on the definition of plan assets (29 C.F.R. §2510.3-101 51 F.R. No. 41262). The Regulation significantly broadens the definition of plan assets under ERISA. The Department of Labor has stated that the Regulations are intended to supersede IB 75-2, and that the assets of certain corporations, partnerships and other entities in which a Plan makes an equity investment could be deemed to be plan assets under certain circumstances.

The Regulations generally provide that, unless certain exemptions apply, when a Plan acquires an equity interest in a corporation, partnership or other entity which is neither a "publicly offered" readily transferable security nor a security issued by an investment company registered under the ICA, the assets of such Plan will include not only the investment, but also the underlying assets of the entity in which the equity investment is made.

The Regulation provides, however, that the assets of a corporation or partnership in which an employee benefit plan invests would not be deemed to be assets of such plan if less than twenty-five (25%) percent of each class of equity interests in the corporation or partnership is held in the aggregate by "benefit plan investors" (including, for this purpose, benefit plans such as Keogh Plans for owner employees and IRAs which are not subject to the general requirements of ERISA). For purposes of this "25 percent" rule, the interests of any person (other than an employee benefit plan investor) who has discretionary authority or control with respect to the assets of the corporation or partnership, or who provides investment advice for a fee (direct or indirect) with respect to such assets, or any affiliate of such person, shall be disregarded. Thus, any investment in the Partnership by the General Partner or its affiliates will be disregarded in determining whether this exemption is satisfied.

The General Partner will not permit investments in the Partnership by "benefit plan investors" to equal or exceed at any time twenty-five (25%) percent of the equity interests in the Partnership. Accordingly, the above exemption will be applicable and the assets of the Partnership should not be deemed to be plan assets under ERISA. In order to comply with the foregoing, the General Partner has the right, in its sole and absolute discretion, to reject any proposed investment by an Offeree or by an existing Limited Partner and/or to require that a Limited Partner withdraw all or any part of the value in a Limited Partner's capital account.

Unrelated Business Taxable Income

Unless removed from the purview of Code Section 501(a) by a relevant exception, organizations described in that provision are exempt from Federal income tax. Notwithstanding this, such organizations are subject to income taxes at the rate applicable to business corporations on their UBTI under Section 511(a) of the Code. Generally, UBTI means the gross income (with certain exceptions) derived by a Code Section 501(a) exempt organization from any trade or business carried on by such entity which is unrelated to the entity's exempt purposes, less certain deductions related to such trade or business. UBTI includes the income recognized by a tax exempt entity from any unrelated trade or business regularly carried on by a partnership of which such tax exempt entity is a partner. Also included in UBTI is "unrelated debt financed income". This is generally the net income from assets not related to the entity's exempt purpose, acquired with debt, to the extent of the ratio of debt on such assets to such assets' adjusted basis.

Under Section 512(b) of the Code, certain forms of income are excluded from the definition of UBTI. These items include dividends, interest, annuities, royalties, capital gains, rents from real property and, in limited circumstances, personal property leased with real property. To the extent, however, that the Partnership employs debt in its strategy, or if the Partnership acquires securities of an entity that generates UBTI that flows through to the

Partnership (e.g., a limited partnership) or if Partnership activities are determined to be a trade or business within the meaning of Code Section 513, it is possible that otherwise tax-exempt Limited Partners subject to these rules would be liable for tax on part of their allocable share of Partnership income.

Each tax-exempt Offeree is urged to consult with its own professional tax advisers concerning the suitability of this investment, taking into account the likelihood that such investment will generate UBTI, as well as whether, under the particular circumstances of its investment, its interest would constitute debt-financed property.

## SUITABILITY REQUIREMENTS

An investment in the Partnership involves a substantial degree of risk. See "*RISK FACTORS*" and "*CERTAIN FEDERAL INCOME TAX CONSIDERATIONS*". Further, transfer of the Interests is restricted by the terms of the Partnership Agreement and applicable Federal and State Securities Laws. The suitability standards referred to herein represent minimum suitability requirements for Offerees and the satisfaction of such standards by an Offeree does not necessarily mean that the Interests are a suitable investment for such Offeree.

This offering is made for purchase of Interests by Offerees that qualify as both: (i) Accredited Investors (as defined in Rule 501 of Regulation D of the 1933 Act), and (ii) Qualified Purchasers (as defined in Section 2(a)(51) of the ICA). The minimum investment amount is $1,000,000 (which may be waived by the General Partner in its sole and absolute discretion).

Annexed to this Memorandum as Exhibit A are the Subscription Documents (the "Subscription Documents") which must be completed by each Offeree. The Subscription Documents set forth in detail the definitions of Accredited Investors and Qualified Purchasers. Each Offeree must check the appropriate places in the Subscription Documents to represent to the Partnership that they are both an Accredited Investor and a Qualified Purchaser in order to be able to purchase Interests.

**THE DELIVERY OF THIS MEMORANDUM TO AN OFFEREE DOES NOT CONSTITUTE AN OFFER, BUT RATHER THE SOLICITATION OF AN OFFER TO BE MADE BY THE OFFEREE, SUBJECT TO ACCEPTANCE BY THE GENERAL PARTNER.**

SUMMARY OF CERTAIN PROVISIONS OF THE PARTNERSHIP AGREEMENT

The rights and obligations of the Partners and the various terms and provisions governing the operation and business of the Partnership are set forth in the Partnership Agreement.

THE PARTNERSHIP AGREEMENT (ATTACHED HERETO AS EXHIBIT "B") AFFECTS THE SUBSTANTIVE RIGHTS OF PARTNERS. OFFEREES ARE URGED TO READ THE PARTNERSHIP AGREEMENT IN ITS ENTIRETY. EACH NEW LIMITED PARTNER WILL BE REQUIRED TO REPRESENT, IN WRITING, AS A CONDITION OF ACQUIRING THE INTERESTS, THAT THE NEW LIMITED PARTNER HAS READ AND UNDERSTOOD THE PROVISIONS OF THE PARTNERSHIP AGREEMENT.

THE PARTNERSHIP AGREEMENT CONTAINS PROVISIONS SEVERELY RESTRICTING THE ABILITY OF THE LIMITED PARTNERS TO TRANSFER THEIR INTERESTS. WITH LIMITED EXCEPTIONS, A TRANSFER MAY NOT BE MADE WITHOUT PRIOR WRITTEN CONSENT OF THE GENERAL PARTNER. THE GENERAL PARTNER WILL NOT GIVE SUCH CONSENT FOR A TRANSFER UNLESS IT RECEIVES SATISFACTORY LEGAL OPINIONS AS TO COMPLIANCE WITH ALL APPLICABLE LAWS INCLUDING THE 1933 ACT, REGULATIONS THEREUNDER, AND APPLICABLE STATE SECURITIES LAWS. TRANSFERS WHICH WOULD RESULT IN A TERMINATION OF THE PARTNERSHIP FOR FEDERAL INCOME TAX PURPOSES ARE PROHIBITED.

The following is a summary of certain of the provisions of the Partnership Agreement and is qualified in its entirety by reference to the Partnership Agreement.

Term

The term of the Partnership shall continue until December 31, 2040, provided, however, that the Partnership may be terminated prior thereto as provided in the Partnership Agreement.

Control of Operations

The General Partner has exclusive authority to control the management of the day to day business operations and all other aspects of the Partnership, other than the termination or dissolution of the Partnership and certain other events, which are subject to the Limited Partners' vote to continue the Partnership as provided in Article IV of the Partnership Agreement. In addition, the Limited Partners have the right to vote upon the appointment of a substitute General Partner and substantive amendment to the Partnership's Certificate of Limited Partnership and the Partnership Agreement.

The General Partner has the right to employ investment managers, investment advisers, attorneys, accountants, consultants, and other personnel on behalf of the Partnership.

The General Partner may own, operate and invest in other interests and business ventures which may result in conflicts of interest. The General Partner is required to devote only such time to the business of the partnership as it may deem necessary, in its sole and absolute discretion.

Liability of General Partner

The General Partner will be generally liable to third parties for all obligations of the Partnership to the extent such obligations are not paid by the Partnership or are not by their terms limited to recourse against specific assets. The doing of any act or the failure to do any act by the General Partner, the effect of which may cause or

result in loss, liability, damage or expense to the Partnership or the Limited Partners, shall not subject the General Partner to any liability to the Partnership or to the Limited Partners, except that the General Partner may be so liable if it is grossly negligent or guilty of willful misconduct or fraud. The Partnership (but not the Limited Partners individually), shall indemnify and save harmless the General Partner from any loss, liability, damage or expense incurred by it by reason of any act or acts taken or omitted by it for and on behalf of the Partnership and in furtherance of the Partnership's best interest, if such act was taken or omitted and did not constitute gross negligence, willful misconduct or fraud.

<u>Withdrawal of General Partner</u>

The Partnership shall terminate upon the dissolution, resignation or bankruptcy of the General Partner; provided, however, that the Partnership may be continued in accordance with the provisions of Article XIII of the Partnership Agreement. Upon the withdrawal or resignation of the General Partner, a majority in interest of the Limited Partners shall have the right to appoint a substitute General Partner.

<u>Liability of Limited Partners</u>

A Limited Partner will have no obligation at any time to make contributions to the capital of the Partnership except for the capital contributions to be made upon such Limited Partner's admission. No Limited Partner shall be personally liable for any debts and obligations of the Partnership; provided, however, that a Limited Partner which has received a distribution from the Partnership may be liable to the Partnership for an amount equal to such distribution, if at the time of such distribution the Limited Partner knew that the Partnership was prohibited from making such distributions under the DRULPA.

<u>Profits, Losses and Interest in Partnership's Net Worth</u>

The interest of the Partners in profit, loss and increases and decreases in Net Worth shall initially be allocated to each Partner in proportion to all Partners' capital accounts for such Fiscal Period and then the General Partner Allocation shall be reallocated by credit to the General Partner's capital account and debit to each Limited Partner's capital accounts.

<u>Distributions When Partnership Terminated</u>

Upon the termination of the Partnership (upon the expiration of its term or the occurrence of any of the other events specified in Article XIII of the Partnership Agreement), the Partnership will be liquidated and the proceeds of liquidation will be applied and distributed in proportion to the respective capital accounts of the Partners. The Partnership Agreement does not provide for distribution to be made other than upon termination of the Partnership.

<u>Distributions in Kind</u>

If the Partnership is dissolved, then to the extent that the Partnership's assets have not been sold or otherwise disposed of, the Partnership's non-cash assets may be distributed in kind and each Partner shall receive an undivided interest in such assets equal to the portion of the proceeds to which the Partner would have been entitled if the assets were sold.

Accounting Period and Method

The Partnership has adopted a December 31 fiscal year, and shall keep its books and records based on the accrual method of accounting.

Power of Attorney

The Partnership Agreement provides for the granting by each Limited Partner of an irrevocable special power of attorney in favor of the General Partner and any successor General Partner. The special power of attorney, which is coupled with an interest (and accordingly cannot be revoked), will particularly cover various administrative functions, including those relating to execution of the Partnership Agreement and certificates relating thereto along with authorized amendments to the Partnership Agreement and certificates.

Records

The General Partner shall be required to keep, in accordance with generally accepted accounting principles, adequate books of account for the Partnership. Such books of account shall be kept on an accrual basis at the principal office of the Partnership and will be subject to inspection by any Limited Partner or authorized representative of a Limited Partner during reasonable business hours on advance written notice and upon the terms of the Partnership Agreement.

Transfer and Assignment

Except in the event of a transfer occurring as a result of a death of a Limited Partner or occurring by operation of law, or those transfer specifically provided for in Section 10.01 of the Partnership Agreement, the sale, assignment or exchange of Interests will be permitted only with consent of the General Partner. Sale, assignment or exchange of all Interest will not be permitted if it would result in termination of the Partnership for Federal income tax purposes and transfer of Interests will be subject to such other restrictions as are indicated in the Partnership Agreement.

Admission of Additional Partners

The General Partner may admit additional Limited Partners as of the beginning of any Fiscal Period and, upon such admission, the Interests of the Partners will be readjusted in accordance with their capital accounts.

Additional Capital Contributions

Any Partner may make additional contributions to the capital of the Partnership with the consent of the General Partner as of the first day of any Fiscal Period of the Partnership and, upon the receipt of such additional capital contributions, the Interests of the Partners will be readjusted in accordance with their capital accounts.

Withdrawals

A Limited Partner may withdraw all or any amount of the value of the Limited Partner's capital account as of the last day of each calendar quarter, upon at least thirty (30) days' prior written notice to the Partnership, and at such other times and upon such terms as the General Partner may determine in its sole and absolute discretion. The Partnership currently expects to pay to a withdrawing Limited Partner an amount equal to approximately ninety-five (95%) percent of the value in such Limited Partner's capital account within fifteen (15) days after the applicable withdrawal date. The Partnership currently expects to pay the balance of the amount remaining in a withdrawing

20

Limited Partner's capital account no later than fifteen (15) days after the: (i) determination of capital account balances, for all Partners as of the end of the applicable calendar quarter, for withdrawals made as of the last day of the first three calendar quarters of each year or (ii) issuance of the December 31 audited financial statements, for withdrawal made as of the last day of each year, as applicable. The Partnership currently expects to pay a Limited Partner who makes a partial withdrawal within fifteen (15) days after the applicable withdrawal date. There are no direct costs associated with a Limited Partner's withdrawal of value from the Partnership.

The Partnership may suspend the payment of any withdrawals from capital accounts (i) during the existence of any state of affairs which, in the opinion of the General Partner, makes the determination of the price, value or disposition of the Partnership's investments impractical or prejudicial to the Partners, or (ii) in which withdrawals or distributions, in the opinion of the General Partner, results in violation of applicable law, or (iii) in the event that Limited Partners, in the aggregate, request withdrawals of twenty-five (25%) percent or more of the Partnership's Net Worth as of any date of withdrawal. All Limited Partners will be notified of any such suspension, and the termination of any such suspension, by means of a written notice.

In the event a Limited Partner withdraws all of the value of such Limited Partner's capital account from the Partnership, the General Partner, in its sole and absolute discretion, may make a special allocation to the Limited Partner for Federal income tax purposes of the net capital gains recognized by the Partnership, in the last calendar year in which the Limited Partner participates in the performance of the Partnership, in such manner as will reduce the amount, if any, by which such Limited Partner's capital account exceeds its Federal income tax basis in its interest in the Partnership before such allocation.

The Partnership has the right to pay cash or marketable securities, or both, to a Limited Partner that makes a withdrawal of value from such Limited Partner's capital account.

Management Fee

The Manager will receive in advance a quarter-annual management fee ("Management Fee") of one-eighth (0.125%) percent of each of each Limited Partner's capital account balance at the beginning of each calendar quarter. A pro rata Management Fee will be charged to Limited Partners on any amounts permitted to be invested during any calendar quarter. No part of the Management Fee will be refunded in the event that a Limited Partner withdraws all or any of the value in the Limited Partner's capital account during a calendar quarter.

General Partner Allocation

The General Partner shall have reallocated by credit to its capital account and each Limited Partner shall have reallocated by debit to each Limited Partners capital account an amount equal to ten (10%) percent of each Limited Partner's pro rata share of the net increase in Net Worth (as defined in this Memorandum) for each calendar year, as adjusted for capital contributions and withdrawals made during the calendar year (the "General Partner Allocation"), in addition to the allocation of the balance of income and profits, or losses, to the General Partner based upon its capital account. The General Partner shall receive the General Partner Allocation on all funds permitted to be invested and withdrawn during each calendar year.

In any calendar year in which a Limited Partner is allocated a portion of a decrease in Net Worth, the General Partner Allocation in the succeeding calendar year(s) shall be calculated on the net increase in Net Worth for such Limited Partner for each such succeeding calendar year(s) reduced by an amount equal to such Limited Partner's allocations of any decrease in Net Worth in the preceding calendar year(s) for such Limited Partner (such allocations of decreases, "Loss Carryover") until the aggregate reductions equal the Loss Carryover. In the event, however, that a Limited Partner withdraws funds at a time in which such Limited Partner has a Loss Carryover, the

amount of such Loss Carryover at such withdrawal date applicable to such Limited Partner shall be reduced by a percentage equal to 100% multiplied by a fraction, the numerator of which is the amount to be withdrawn from such Limited Partner's capital account, and the denominator of which is the amount in such capital account immediately prior to the withdrawal.

Expenses

The Partnership will pay all of its accounting, legal, administrative (which includes, without limitation the expense of determining and maintaining capital account balances and preparation of reports and financial statements) and other operating expenses, including, without limitation, an allocation of expenses paid by the General Partner (e.g., office and equipment rental) and expenses of the offering and sale of Interests for each calendar year (collectively, the "Administrative Expenses") up to a maximum aggregate amount of three-quarter (0.75%) percent (or a prorated amount for the Partnership's last calendar year and on any amounts permitted to be invested and withdrawn during a calendar year) of the Partnership's Net Worth at the end of its calendar year (the "Expense Cap"). To the extent that the Administrative Expenses exceed the Expense Cap in any calendar year, the General Partner shall pay such excess Administrative Expenses. The Partnership will also pay all of its investment charges and expenses (e.g., brokerage commissions, interest on margin accounts, borrowing charges on securities sold short, custodial fees, trustee fees, bank fees, taxes, etc.), all of which are not and shall not be deemed to be Administrative Expenses and are not subject to the Expense Cap. In addition, the Partnership shall pay all organizational costs (which are not and shall not be deemed to be Administrative Expenses and are not subject to the Expense Cap) and expense such costs as permitted by applicable accounting rules.

Amendment

The Partnership Agreement is subject to amendment with consent of the General Partner and Limited Partners owning more than fifty (50%) percent in Interest, except where the Partnership Agreement and/or DRULPA requires a different vote of Limited Partners.

## CERTAIN FEDERAL INCOME TAX CONSIDERATIONS

General

There are risks associated with the Federal income tax aspects of an investment in the Partnership. This summary is not intended as a substitute for careful tax planning, particularly since the tax aspects of an investment in the Partnership are complex and will vary depending on the overall tax posture of each Limited Partner.

**OFFEREES ARE STRONGLY ADVISED TO CONSULT THEIR TAX ADVISERS WITH SPECIFIC REFERENCE TO THEIR TAX SITUATION PRIOR TO PURCHASING AN INTEREST.**

**EACH OFFEREE WILL BE REQUIRED TO REPRESENT THAT THE OFFEREE HAS RELIED UPON THE ADVICE OF THE OFFEREE'S ADVISERS AND REPRESENTATIVES, INCLUDING THE OFFEREE'S TAX AND LEGAL ADVISERS, BEFORE PURCHASING AN INTEREST. OFFEREES MUST RELY SOLELY ON THEIR ADVISERS WITH RESPECT TO THE FINANCIAL AND TAX CONSEQUENCES OF THIS INVESTMENT. NO REPRESENTATION OR WARRANTY OF ANY KIND IS MADE BY THE GENERAL PARTNER, THE PARTNERSHIP OR ANY COUNSEL OR ACCOUNTANTS TO THE PARTNERSHIP WITH RESPECT TO ANY FINANCIAL OR FOREIGN, FEDERAL, STATE OR LOCAL INCOME TAX CONSEQUENCES RELATING TO THE PARTNERSHIP OR OF AN INVESTMENT IN THE PARTNERSHIP. THE TAX AND OTHER MATTERS DESCRIBED IN THIS MEMORANDUM DO NOT CONSTITUTE, AND SHOULD NOT BE CONSIDERED AS, LEGAL OR TAX ADVICE.**

The following is a summary of certain material Federal income tax aspects of acquiring Interests. It is based upon the Code, rules and regulations promulgated thereunder, published rulings and court decisions, all as in effect on the date of this Memorandum. This summary does not discuss all of the tax aspects that may be relevant to a particular Offeree. No advance rulings have been or will be sought from the Service regarding any matter discussed in this Memorandum. Counsel to the Partnership has not rendered any legal opinions with respect to any Federal income tax consequences relating to the Partnership or an investment therein. Accordingly, Offerees are urged to consult their tax advisers to determine the Federal, state, local and foreign income and other tax consequences to them of acquiring Interests.

For individual taxpayers, the maximum Federal income tax rate generally is thirty-nine and six-tenths (39.6%) percent, including short-term capital gains. Long-term capital gains are taxed for individual taxpayers at maximum rates of twenty (20%) percent (for gains from the sale of capital assets held more than one (1) year). In addition, Limited Partners will be taxed on gains on certain open positions (i.e., unrealized gains) in "Section 1256 contracts" (e.g., foreign currency contracts and non-equity options, all as defined in Section 1256 of the Code) that are "marked to market" at the end of each year for Federal income tax purposes held by any partnership or managed accounts in which the Partnership invests. Under this mark-to-market procedure, Limited Partners will be subject to tax on certain gains that may never be realized.

Partnership Status. Effective January 1, 1997, the Service finalized regulations that generally permit domestic unincorporated entities to be taxed as partnerships or corporations. Under these regulations, a newly formed non-corporate domestic entity is automatically classified as a partnership if it has at least two members, unless it affirmatively elects to be classified as an association taxable as a corporation. As the Partnership will have

23

the General Partner and at least one Limited Partner, the Partnership will be taxed as a partnership under these regulations.

Certain entities otherwise taxable as partnerships, however, are taxed as corporations if they are "publicly traded" or deemed to be readily tradeable on a secondary market or the substantial equivalent thereof (such entities "Publicly Traded Partnerships"). Under the Treasury Regulations, certain types of transfers of interests in a partnership are disregarded in determining whether such interests are readily tradeable in a secondary market. In addition, interests in a partnership are not readily tradeable on a secondary market if (i) all interests in the partnership were issued in a transaction (or transactions) that was not required to be registered under the 1993 Act; and (ii) the partnership does not have more than one hundred (100) partners at any time. Notwithstanding the foregoing, an entity otherwise qualifying as a Publicly Traded Partnership will not be taxed as a corporation if, for all years, ninety (90%) percent or more of the entity's gross income consists of "qualifying income." Recently promulgated Treasury Regulations clarify that qualifying income includes interest, dividends, capital gain from the sale of stock and other capital assets held for the production of income (including gain on positions that are marked to market), gain characterized as ordinary income from certain foreign currency transactions and certain "conversion" transactions, income from certain notional principal contracts and other substantially similar income to the extent determined by the IRS, provided the entity receiving such qualifying income is not acting as a broker, market maker or dealer. Special rules apply for losses and for straddles and similar transactions.

Based on the Partnership's investment objective and the Investment Manager's strategy and expected investments, it appears that the Partnership will satisfy the 90% qualifying income test described above. If that test is satisfied, then the Partnership will not be taxed as a corporation even if it has more than one hundred (100) Partners (the Partnership, however, will not have more than four hundred ninety-nine (499) Partners). Moreover, if the Partnership fails to meet the qualifying income test but the IRS determines that such failure was inadvertent and the Partnership makes certain adjustments and takes corrective steps to meet such test, then notwithstanding the failure, the Partnership will not be taxed as a corporation under these rules. Accordingly, the Partnership may admit more than one hundred (100) Partners and if it does, it will diligently attempt to satisfy the qualifying income test.

Taxation of Partners on Partnership Profits and Losses. The Partnership, if treated as a partnership for Federal income tax purposes as discussed above, will not itself generally be subject to Federal income tax. Rather, each Partner in computing its Federal income tax liability for a taxable year will be required to take into account its allocable share of all items of Partnership income, gain, loss, deduction and credit for the taxable year of the Partnership ending within or with such taxable year of such Partner, regardless of whether such Partner has received any distributions from the Partnership. The characterization of an item of profit or loss usually will be determined at the Partnership (rather than at the Partner) level.

Tax Allocations of Partnership Profits and Losses. For Federal income tax purposes, a Limited Partner's allocable share of items of Partnership income, gain, loss, deduction and credit will be determined by the Partnership Agreement if such allocations either have "substantial economic effect" or are determined to be in accordance with the Partners' interests in the Partnership. If the allocations provided by the Partnership Agreement were successfully challenged by the Service, the redetermination of the allocations to a particular Partner for Federal income tax purposes could be less favorable than the allocations set forth in the Partnership Agreement. Since items of income, gain, loss and deduction are allocated in proportion to capital account balances, it is not likely the Service would assert that the Partnership's allocations lack substantial economic effect.

Tax allocations generally will be made proportionately to book accounting allocations. However, the amount of such tax allocations may differ significantly from book accounting allocations because book accounting allocations are made with respect to unrealized gains and losses (i.e., reflecting interim changes in the value of

investments) and tax allocations are generally made with respect to recognized gains and losses (i.e., generally when they are sold).

Book Accounting Allocations. At the end of the calendar year and any other interim periods during which the General Partner, in its sole and absolute discretion, allows entry of new Partners, withdrawal (total or partial) of Partners or increases in Partners' Interests through additional capital contributions, income or loss will be allocated to each Partner. This includes an allocation based upon unrealized gains and losses (on all positions not yet sold that have appreciated or depreciated), including long and short positions, outstanding options, and the like. Since unrealized gains and losses are not taxable, except for regulated futures contracts held at the end of the Fiscal Year, the allocation for accounting purposes will differ from that for tax purposes in each year.

Adjusted Tax Basis for Interests. A Limited Partner's adjusted tax basis for its Interest generally will be equal to the amount of its initial capital contribution and will be increased by (a) any additional capital contributions made by such Limited Partner and (b) such Limited Partner's allocable share of items of Partnership taxable income and gain. Such adjusted tax basis generally will be decreased, but not below zero, by such Limited Partner's allocable share of (i) items of Partnership taxable deduction and loss and (ii) withdrawals by such Limited Partner.

In general, if the recognition of a Limited Partner's distributive share of Partnership losses would reduce its adjusted tax basis for its Interest below zero, the recognition of such losses by the Limited Partner would be deferred until such time as the recognition of such losses would not reduce the Limited Partner's basis below zero.

Sale of Interests. A sale of all or part of a Limited Partner's Interest will result in the recognition of gain or loss in an amount equal to the difference between the amount of the sales proceeds and the Limited Partner's allocable adjusted tax basis for its Interest. Such Limited Partner's adjusted tax basis will be adjusted for this purpose by its allocable share of the Partnership's income or loss for the year of such sale or withdrawal. Any gain or loss recognized with respect to such a sale generally will be treated as capital gain or loss.

Treatment of Cash Distributions; Withdrawals; Liquidation. Cash distributions and withdrawals, to the extent they do not exceed a Limited Partner's adjusted tax basis in such Limited Partner's Interest, will not result in taxable income to such Limited Partner but will reduce such Limited Partner's adjusted tax basis in such Limited Partner's Interest. Distributions in excess of a Limited Partner's adjusted tax basis in such Limited Partner's Interest immediately prior thereto ("Excess Distributions") will result in the recognition of gain to the extent of such excess.
In general, any gain recognized upon an Excess Distribution in connection with a redemption or liquidation of the Partnership will be treated as capital gain or loss, except for the portion of any gain which is attributable to such Limited Partner's share of income of the Partnership up to the date of exchange, redemption or liquidation, which income will be taxed as otherwise described above. Such gain or loss will be treated as long-term capital gain or loss taxable at a maximum rate of 20% if the Interest so disposed was held for more than one (1) year, or as short-term capital gain or loss if the Interest so disposed of was held for one (1) year or less.

Limitation on Deductibility of Capital Losses. Capital losses generally are deductible by individuals only to the extent of capital gains for the taxable year plus up to $3,000 of ordinary income ($1,500 in the case of a husband and wife filing separate returns). Excess capital losses may be carried forward but not back. Capital losses generally are deductible by corporations only to the extent of capital gains for the taxable year. Corporations may carry capital losses back three years and forward five years. Prospective corporate Offerees should consult their tax advisers regarding the deductibility of capital losses.

Limitation on Deductibility of Passive Losses. In addition to the limitations on the deductibility of losses described above, the Code restricts individuals, certain personal service corporations and certain non-corporate taxpayers from using trade or business losses sustained by limited partnerships and other businesses in which the taxpayer does not materially participate to offset income from other sources. Therefore, such losses cannot be used

25

to offset salary or other earned income, active business income or "portfolio income" (i.e., dividends, interest, royalties and nonbusiness capital gains) of the taxpayer; however, in the case of certain closely-held corporations, passive activity losses can offset other active business income. Losses and credits suspended under the limitation may be carried forward indefinitely and may be used in later years against income from passive activities. Moreover, a taxable disposition by a taxpayer of the entire interest in a passive activity will cause the recognition of any suspended losses attributable to that activity.

This so-called "passive activity loss" limitation generally will not apply, however, to limit losses sustained by the Partnership because the Partnership's investment activities are not expected to produce losses which would be characterized as "passive activity losses" under current regulations. Furthermore, a Limited Partner will not be able to use losses from its interests in passive activities to offset its share of income and capital gain from the Partnership that is not "passive activity income".

   Limited Deduction for Certain Expenses. The Partnership's activities in any taxable year may vary sufficiently with regard to its status as either a trader or investor to preclude a determination at this time. If the Partnership is a trader engaged in the business of trading securities, each Partner who is an individual will be entitled to deduct such Partner's share of expenses of the Partnership under Section 162 of the Code as business expenses. If the Partnership is an investor engaged in an activity for its own account, each Partner who is an individual will only be able to deduct such Partner's share of expenses of the Partnership to the extent that such investment expenses (excluding interest) when combined with other expenses deductible under Section 212 of the Code exceed two (2%) percent of such Partner's adjusted gross income. In addition, the amount in excess of such two (2%) percent limitation will not be deductible in computing the alternative minimum tax. The deductible portion, if any, of such expenses becomes part of the Partner's total itemized deductions, which total is subject to further reduction generally in amount equal to the lesser of three (3%) percent of an individual's adjusted gross income in excess of $100,000 (indexed for inflation) or eighty (80%) percent of the individual's otherwise allowable total itemized deductions. To the extent that the Partnership incurs such itemized deductions subject to the two (2%) percent floor, depending on each Limited Partner's particular circumstances, the taxable income of certain Limited Partners would exceed their true economic gain to the extent of their share of such expenses that are less than such two (2%) percent floor. The General Partner will review the Partnership's activities for each taxable year and take the position that the Partnership is either a trader or an investor based upon the facts and circumstances existing at such time.

   Limitation on Deductibility of Investment Interest. Interest paid or accrued on indebtedness properly allocable to property held for investment, other than a passive activity ("investment interest"), generally is deductible by individuals and other non-corporate taxpayers only to the extent it does not exceed net investment income. Investment interest disallowed under this limitation is carried forward and treated as investment interest in succeeding taxable years. Investment income includes gross income from "property held for investment" and generally includes short-term capital gains attributable to the disposition of such property and any (long-term) capital gains attributable to the disposition of such property so long as the taxpayer has elected to have such net (long-term) capital gains taxed at ordinary income rates. For purposes of these rules, property held for investment includes property that produces "portfolio income" (see *"Limitation on Deductibility of Passive Losses"* above) and any interest in a trade or business activity which is not a passive activity and in which the holder does not materially participate. Any items of income or expense taken into account under the passive activity loss limitation is excluded from investment income and expense for purposes of computing net investment income.

   Tax Elections. The Code provides for optional adjustments to the basis of Partnership property upon distributions of Partnership property to a Partner and transfers of Interests, including transfers by reason of death, provided that a Partnership election has been made pursuant to Section 754 of the Code. As a result of the complexities and added expense of the tax accounting required to implement such an election, and because such election, once made, may be revoked only with the consent of the Service, it is highly unlikely that the General

26