Partner will make such an election. Accordingly, any benefits that might be available to the Partners by reason of such an election would not be available.

Taxes Withheld. The Partnership may withhold taxes attributable to any Partner to the extent required under the Code of Treasury Regulations, or under any state, local or other tax law. Any taxes so withheld by the Partnership shall be deemed to be a distribution or payment to such Partner and shall reduce the amount otherwise distributable to each Partner pursuant to the Partnership Agreement.

Unrelated Business Taxable Income. For a discussion of UBTI and how it relates to organizations that are generally exempt from Federal income tax, see "INVESTMENT BY CERTAIN TAX EXEMPT ENTITIES -- ERISA CONSIDERATIONS -- Unrelated Business Taxable Income" above.

Tax Audits. Under the Code, adjustments in tax liability with respect to Partnership items generally will be made at the Partnership level in a single partnership proceeding rather than in separate proceedings with each Partner. The General Partner will represent the Partnership as the "tax matters partner" during any audit and in any dispute with the Service. Each Limited Partner will be informed by the General Partner of the commencement of an audit of the Partnership. In general, the General Partner may enter into a settlement agreement with the Service on behalf of, and binding upon, the Partners. Prior to settlement, however, a Limited Partner may file a statement with the Service providing that the General Partner does not have authority to settle on behalf of such Limited Partner.

The period for assessing a deficiency against a partner in a partnership, such as the Partnership, with respect to a partnership item is the later of three (3) years after the partnership files its returns or, under certain circumstances, if the name, address, and taxpayer identification number of the partner do not appear on the partnership return, one (1) year after the Service is furnished with such information. The General Partner may consent on behalf of the Partnership to an extension of the period for assessing a deficiency with respect to a Partnership item. As a result, a Limited Partner's Federal income tax return may be subject to examination and adjustment by the Service for a Partnership item more than three (3) years after such return has been filed.

If adjustments are made to items of Partnership income, gain, loss, deduction or credit as the result of an audit of the Partnership, the tax returns of the Limited Partners may be reviewed by the Service, which could result in adjustments of non-Partnership items as well as Partnership items.

Offerees should note that the Treasury Department has examined and continues to study among other things, the administrative and compliance issues related to the tax treatment of large partnerships, including the issues of imposing collection and/or withholding of tax at the partnership level and procedures for audits and assessments of partnerships and partners.

Possible Tax Law Changes. The foregoing discussion is only a summary and is based upon existing Federal income tax law. Offerees should recognize that the Federal income tax treatment of an investment in Interests may be modified at any time by legislative, judicial or administrative action. Any such changes may have retroactive effect with respect to existing transactions and investments and may modify the statement made above.

State and Local Taxes; Foreign Taxes. In addition to the Federal income tax aspects described above, various state and local tax aspects should be considered. State and local taxation resulting from the Partnership's activities may differ from the treatment for Federal income tax purposes. Offerees are urged to consult their tax advisers with respect to the state and local tax aspects of acquiring Interests. To the extent that the Partnership invests in foreign securities, the Partnership and the Limited Partners might become subject to tax in jurisdictions outside the United States on the Partnership's foreign-source income, if any. Such taxes may be creditable, in whole or in part, against the Limited Partners' respective U.S. income tax liabilities, if any.

* * * * *

The foregoing summary is not intended as a substitute for professional tax advice, nor does it purport to be a complete discussion of all tax consequences that could apply to this investment. For example, the foregoing does not discuss tax consequences that may be relevant to particular Limited Partners in light of their personal circumstances and tax consequences of particular investments such as "wash sales," hedging or conversion transactions, straddle or other risk reduction transactions. In addition, the foregoing does not discuss estate tax, gift tax or other estate planning aspects of this investment, nor does it specifically discuss Federal income tax rates or the alternative minimum tax. Accordingly, prospective Limited Partners must consult their own tax advisers with respect to the effects of this investment on their own tax situation.

## INVESTMENT RESTRICTIONS

A purchaser of Interests will be required to represent that the purchaser is acquiring the Interest for the purchaser's own account for investment purposes only (and is assuming the economic risk of the investment) and not with a view to the distribution thereof (that is to say, that such purchaser is not acting as an underwriter or conduit for the sale to the public or to others of unregistered securities, directly or indirectly, on behalf of the Partnership).

The Interests offered hereby have not been registered under the 1933 Act or under any state securities or "blue sky" laws ("State Securities Laws") and they may not be sold, assigned, transferred, pledged, hypothecated, or otherwise disposed of or encumbered, except in compliance with the requirements of the 1933 Act, applicable State Securities Laws and the Partnership Agreement. Accordingly, Limited Partners will not be able to transfer the Interests without satisfactory evidence to the effect that the Interests were originally acquired for investment purposes and not for distribution. Offerees, therefore, should not acquire any Interests in anticipation of selling them on a short-term basis upon some increase in price or to purchase some other security or for any other purpose which could reasonably be foreseen at the time of making the purchase. All instruments evidencing Interests in the Partnership will bear a legend to the foregoing effect. Registration under the 1933 Act is not anticipated nor is the Partnership required to effect any such registration. Prior to any resale of Interests to the public, other than by an effective registration statement filed with the SEC, or other applicable exemption, such securities must have been beneficially owned and fully paid for a least one year and other requirements of Rule 144 must be present.

If a Limited Partner wishes to dispose of the Limited Partner's Interest in a transaction not requiring registration under the 1933 Act, such disposition is governed by, among other things, the terms of the Partnership Agreement. See "*SUMMARY OF CERTAIN PROVISIONS OF THE PARTNERSHIP AGREEMENT — Transfer and Assignment*". The General Partner's consent shall be required for any transfers of an Interest, and consent to such transfer shall be at the sole and absolute discretion of the General Partner. In general, an assignee must satisfy the suitability standards applicable to the transferor or assignor. In no event may a transfer of all or any part of any Interest be made, if the General Partner is informed in an opinion of counsel that such transfer (i) violates the provisions of the 1933 Act and the rules and regulations thereunder or (ii) violates any State Securities Laws, or (iii) violates the DRULPA. Additionally, an Interest may not be transferred if such transfer would result in a change of ownership, by reason of sales or exchanges, of fifty (50%) percent or more of the total Interests of the Partnership (or such other percentage of interest as will result in a termination of the Partnership under Section 708(b)(1) or successor Section of the Code) during the twelve (12) month period ending on the date of such transfer.

Any violation of the foregoing limitations by the Limited Partners could have serious legal and financial consequences to the Partnership and the Limited Partners. DUE TO THESE LIMITATIONS ON TRANSFERABILITY, LIMITED PARTNERS MAY BE REQUIRED TO HOLD THEIR INTERESTS INDEFINITELY UNLESS THEY WITHDRAW FROM THE PARTNERSHIP IN ACCORDANCE WITH THE PROCEDURES SET FORTH IN THE PARTNERSHIP AGREEMENT.

**First Frontier, L.P**

**Exhibit "A"**

**Subscription Documents**

**First Frontier, L.P.**

**Subscription Documents Booklet**

**Instructions
And
Subscription Documents
1,2,3,4,5 and 6**

First Frontier, L.P.

Subscription Documents

Instructions to Subscribers

### INSTRUCTIONS TO SUBSCRIBERS

Persons and entities wishing to subscribe to Interests in FIRST FRONTIER, L.P. should complete and sign the Subscription Agreement and supplemental documents.

Normally, you may subscribe by completing the following steps:

CAREFULLY REVIEW THE MEMORANDUM AND THE EXHIBITS THERETO.

**DOCUMENT**
**NUMBER**

1. Subscription Agreement:

   Complete and sign page 7.

2. Limited Partner's Signature Page:

   Complete and Sign.

3. Special Power of Attorney:

   Sign and complete page 3 and have your signature notarized on page 4 or 5.

4. Questionnaire For Individual Subscriber:

   Complete all sections and sign on page 5.

5. Questionnaire For Partnership, Corporate or Trust Subscriber:

   Complete all sections, sign on page 6 and complete Exhibit A, B or C, as applicable.

6. Certification of Non-Foreign Status:

   Complete and sign appropriate Certification.

Completed documents should be returned to:

> Frontier Capital Management, LLC
> 149 Fifth Avenue, 15th Floor
> New York, NY 10010
> Attention: Mr. Mark Ostroff

INSTRUCTIONS FOR TRANSMITTAL OF FUNDS:

You subscription may be made by wire transfer in accordance with the following wire instructions:

Bank:               HSBC
                    452 Fifth Avenue
                    New York, NY 10018

ABA#:               021001088
A/C #:              610217062
For Account of:     First Frontier, L.P.

Please inform Mr. Mark Ostroff at (212) 674-5500 of the date, the amount, the bank and branch from which the funds originate. This will allow us to confirm the receipt of your funds. If you prefer to make your subscription by check, please make your check payable to "First Frontier, L.P." and deliver it to Frontier Capital Management, LLC with your completed documents.

We will transfer your capital contribution into First Frontier, L.P.'s account upon accepting your completed subscription documents. You will at that time begin participating as a limited partner in First Frontier, L.P.

**First Frontier, L.P.**

**Subscription Document 1**

**Subscription Agreement**

# FIRST FRONTIER, L.P.

### SUBSCRIPTION AGREEMENT

### ARTICLE I

### PURCHASE OF PARTNERSHIP INTEREST

1.01    Subscription.  The undersigned ("Subscriber") hereby subscribes (the "Subscription") to a limited partnership interest in the amount set forth on the Signature Page hereof ("Interest") in FIRST FRONTIER, L.P. (the "Partnership"), a limited partnership formed under the laws of the State of Delaware, with offices at 149 Fifth Avenue - 15th Floor, New York, New York 10010.  This subscription shall become effective when it has been duly executed by Subscriber and the subscription agreement has been accepted and agreed to by Frontier Capital Management, LLC (the "General Partner").

1.02    Receipt of Memorandum Acknowledged.  Subscriber acknowledges receipt of a copy of the Partnership's Confidential Private Placement Memorandum dated January 18, 1999 and related Exhibits (the "Memorandum").

SUBSCRIBER ACKNOWLEDGES THAT SUBSCRIBER IS ACQUIRING THE INTEREST AFTER INVESTIGATION OF THE PARTNERSHIP AND ITS PROSPECTS AND THAT NO OFFER OR SOLICITATION HAS BEEN MADE TO SUBSCRIBER EXCEPT THROUGH THE MEMORANDUM. SUBSCRIBER FURTHER ACKNOWLEDGES THAT SUBSCRIBER IS NOT RELYING UPON ANY REPRESENTATION MADE BY ANY PERSON EXCEPT AS CONTAINED IN THE MEMORANDUM.

1.03    Payment For Subscription.  Subscriber agrees that the contribution to the Partnership for the amount of Subscriber's subscription is to be made upon submission of this Subscription Agreement and the Special Power of Attorney in the form annexed hereto as Subscription Document 3.

1.04    Partnership Right to Accept or Reject Subscription.  The Partnership shall have the right to accept or reject the Subscription, in whole or in part, for any reason whatsoever, including but not limited to the belief of the General Partner that Subscriber is neither an Accredited Investor (as defined in Rule 501 of Regulation D promulgated by the Securities and Exchange Commission under the Securities Act of 1933, as amended (the "1933 Act")) nor a Qualified Purchaser (as defined in Section 2(a)(51)(A) of the Investment Company Act of 1940, as amended).

ARTICLE II

REPRESENTATIONS AND WARRANTIES

2.01     Representations and Warranties by General Partner. The General Partner represents and warrants to Subscriber, as follows:

(a)     The General Partner has the full legal right, power and authority to enter into this Agreement and to perform its obligations hereunder; execution and delivery of this Agreement and the consummation of the transactions contemplated herein will not result in a breach or violation of, or a default under, any agreement, law, regulation or decree by which the Partnership is bound.

(b)     Subscriber will acquire the Interest free and clear of any liens, charges or encumbrances.

(c)     No registration with, application to, approval of, or other action by any Federal, New York State or other governmental commission or regulatory body within the State of New York is required in connection with this Agreement and no Federal or state agency has passed upon the Interest or made any findings or determination as to the fairness of this investment.

2.02     Survival of Representations and Warranties. The representations and warranties made by the General Partner shall survive the closing and shall be fully enforceable at law or in equity against the General Partner and its successors and assigns.

2.03     Disclaimer.

(a)     It is specifically understood and agreed by Subscriber that the General Partner has not made, nor by this Agreement shall be construed to make, directly or indirectly, explicitly or by implication, any representation, warranty, projection, assumption, promise, covenant, opinion, recommendation or other statement of any kind or nature with respect to the anticipated profits or losses of the Partnership.

(b)     The General Partner has made available to Subscriber and Subscriber's representatives, if any, full and complete information concerning the financial structure of the Partnership, and any and all data requested by Subscriber as a basis for estimating the potential profits and losses of the Partnership and Subscriber acknowledges that Subscriber has either reviewed such information or has waived review of such information.

2.04     Representations and Warranties by Subscriber. Subscriber represents and warrants to the Partnership and General Partner, as follows:

(a)     Subscriber is acquiring the Interest for Subscriber's own account, as principal, for investment purposes only and not with any intention to resell, distribute or otherwise dispose of or fractionalize the Interest, in whole or in part.

(b)     Subscriber is both an Accredited Investor and a Qualified Purchaser.

(c)     Subscriber has been furnished, has carefully read, and has relied solely (except for information obtained pursuant to paragraph (d) below), on the information contained in the Memorandum and the Partnership's most recent annual audited report and most recent quarterly unaudited statements, and Subscriber has not received any other offering literature or prospectus, and no representations or warranties have been made to Subscriber by the General Partner, or its manager, employees or agents, other than the representations of the General Partner set forth herein and in the Memorandum and in the Partnership's Limited Partnership Agreement (the "Partnership Agreement").

(d)     Subscriber has had an unrestricted opportunity to: (i) obtain additional information concerning the offering of Interests pursuant to the Memorandum (the "Offering"), the Interest, the General Partner,

the Partnership and any other matters relating directly or indirectly to Subscriber's purchase of the Interest; and (ii) ask questions of, and receive answers from the General Partner concerning the terms and conditions of the Offering and to obtain such additional information as may have been necessary to verify the accuracy of the information contained in the Memorandum.

(e)      Subscriber has carefully reviewed the various risks of an investment in the Partnership, including the risks summarized under "RISK FACTORS" in the Memorandum. Subscriber can afford to bear the risks of an investment in the Partnership.

(f)      Subscriber understands that the General Partner potentially has conflicts of interest with the Partnership, and Subscriber has carefully reviewed the various conflicts summarized under "CONFLICTS OF INTEREST" in the Memorandum.

(g)      Subscriber understands that the Interests in the Partnership cannot be sold, assigned, transferred, exchanged, hypothecated or pledged, or otherwise disposed of or encumbered without the consent of the General Partner, which may be given or withheld in its sole and absolute discretion, and that no market will exist for the resale of any Interests. Subscriber understands further that withdrawals are restricted as summarized under "SUMMARY OF CERTAIN PROVISIONS OF THE PARTNERSHIP AGREEMENT-Withdrawals" in the Memorandum. In addition, Subscriber understands that the Interests have not been registered under the 1933 Act, or under any applicable state securities or blue sky laws or the laws of any other jurisdiction, and cannot be resold unless they are so registered or unless an exemption from registration is available. Subscriber understands that there is no plan to register the Interests under any law.

(h)      All information that Subscriber has provided concerning Subscriber, Subscriber's financial position and knowledge of financial and business matters is correct and complete as of the date hereof.

(i)      Subscriber has not dealt with a broker in connection with the purchase of the Interest and agrees to indemnify and hold the General Partner and the Partnership harmless from any claims for brokerage or finder's fees in connection with the transactions contemplated herein.

(j)      Subscriber is not relying on the General Partner or the Partnership with respect to any legal, investment or tax considerations involved in the purchase, ownership and disposition of an Interest. Subscriber has relied solely upon the advice of, or has consulted with, in regard to the legal, investment and tax considerations involved in the purchase, ownership and disposition of an Interest, Subscriber's legal counsel, business and/or investment adviser, accountant and tax adviser.

(k)      If Subscriber is a corporation, partnership, trust or other entity, it is authorized and qualified to become a limited partner in, and authorized to make its capital contribution to, the Partnership and the person signing this Subscription Agreement on behalf of such entity has been duly authorized by such entity to do so.

(l)      Subscriber is willing and able to bear the economic risks of an investment in the Partnership for an indefinite period of time. Subscriber has read and understands the provisions of the Partnership Agreement.

(m)      Subscriber maintains Subscriber's domicile, and is not merely a transient or temporary resident, at the residence address shown on the signature page of this Subscription Agreement.

ARTICLE III

MISCELLANEOUS

3.01      Amendment of Partnership Agreement and Certificate   The parties agree to execute an amendment of the Partnership Agreement, and to execute and file an amendment of the Partnership's Certificate of

11855-00002/672362.3

Limited Partnership (the "Certificate"), if required, to conform to and embody the terms and conditions of this Agreement.

3.02    Addresses and Notices.  The address of each party for all purposes shall be the address set forth on the first page of this Agreement or on the signature page annexed hereto, or such other address of which the other parties have received written notice. Any notice, demand or request required or permitted to be given or made hereunder shall be in writing and shall be deemed given or made when delivered in person or when sent to such party at such address by registered or certified mail, return receipt requested.

3.03    Titles and Captions.  All Article and Section titles or captions in this Agreement are for convenience only. They shall not be deemed part of this Agreement and do not in any way define, limit, extend or describe the scope or intent of any provisions hereof.

3.04    Tax Returns.  The General Partner agrees that the income tax returns of the Partnership shall be prepared by a Certified Public Accountant selected by the General Partner.

3.05    Assignability.  This Agreement is not transferable or assignable by Subscriber.

3.06    Pronouns and Plurals.  Whenever the context may require, any pronoun used herein shall include the corresponding masculine, feminine or neuter forms. The singular form of nouns, pronouns and verbs shall include the plural and vice versa.

3.07    Further Action.  The parties shall execute and deliver all documents, provide all information and take or forbear from taking all such action as may be necessary or appropriate to achieve the purposes of this Agreement. Each party shall bear its own expenses in connection therewith.

3.08    Applicable Law.  This Agreement shall be construed in accordance with and governed by the laws of the State of New York and any action or proceeding hereunder must be commenced and prosecuted in the Supreme Court of the State of New York, New York County.

3.09    Binding Effect.  This Agreement shall be binding upon and inure to the benefit of the parties and their heirs, administrators, successors, legal representatives, personal representatives, transferees and assigns. If Subscriber is more than one person, the obligation of Subscriber shall be joint and several and the agreements, representations, warranties and acknowledgments herein contained shall be deemed to be made by and be binding upon each such person and his heirs, executors, administrators and successors.

3.10    Integration.  This Agreement, together with the Partnership Agreement, constitutes the entire agreement between the parties pertaining to the subject matter hereof and supersedes all prior agreements and understandings pertaining thereto. No covenant, representation or condition not expressed in this Agreement shall affect or be deemed to interpret, change or restrict the express provisions hereof.

3.11    Amendment.  This Agreement may be modified or amended only with the written approval of all parties.

3.12    Creditors.  None of the provisions of this Agreement shall be for the benefit of or enforceable by creditors of any party.

3.13    Waiver.  No failure by any party to insist upon the strict performance of any covenant, agreement, term or condition of this Agreement or to exercise any right or remedy available upon a breach thereof shall constitute a waiver of any such breach or of such or any other covenant, agreement, term or condition.

3.14    Rights and Remedies.  The rights and remedies of each of the parties hereunder shall be mutually exclusive, and the implementation of one or more of the provisions of this Agreement shall not preclude the implementation of any other provision.

3.15    Counterparts.  This Agreement may be executed in counterparts, all of which taken together shall constitute one agreement binding on all the parties notwithstanding that all the parties are not signatories to the original or the same counterpart.

3.16    Indemnification.  Subscriber understands that the offer of the Interests to subscribe was made in reliance upon Subscriber's representations and warranties set forth in this ARTICLE II above.  Subscriber agrees to provide, if requested, any additional information that may reasonably be requested by the General Partner to determine the eligibility of Subscriber to purchase and maintain ownership of the Interest.  Subscriber hereby agrees to indemnify the Partnership, General Partner and each of their respective affiliates and to defend and hold each of them harmless from and against any loss, claim, damage, liability, cost or expense (including reasonable attorneys' fees) due to or arising out of or resulting from a breach of any representation, warranty or agreement of Subscriber contained in this Subscription Agreement or in any other document provided by Subscriber to the Partnership and/or General Partner, and to defend and hold each of them harmless against all losses, claims, damages, liabilities, costs or expenses (including reasonable attorneys' fees) arising as a result of the sale or distribution of the Interest or any part thereof by Subscriber in violation of the 1933 Act, other applicable law or the Partnership Agreement or any misrepresentation or breach by Subscriber with respect to the matters set forth herein.  In addition, Subscriber agrees to indemnify the Partnership, General Partner and each of their respective affiliates and to defend and hold each of them harmless from and against, any and all loss, claim, damage, liability, cost or expense (including reasonable attorneys' fees) to which they may be put or which they may incur or sustain by reason of or in connection with any misrepresentations made by Subscriber  with respect to the matters about which representations and warranties are required by the terms of this Subscription Agreement, or any breach of any such warranties or any failure to fulfill any covenants or agreements set forth herein or included in the Memorandum or Partnership Agreement.  Notwithstanding any provisions of this Subscription Agreement, Subscriber does not waive any rights granted to it under applicable securities laws.

[SIGNATURE PAGE]

IN WITNESS WHEREOF, Subscriber has executed this Subscription Agreement on this  day of
, 20

Social Security or Employer
Identification Number of
Subscriber

Print Name of Subscriber

Signature for Individual
Subscribers:

Signature for Subscriber
Other than Individual:

By:_____
Signature of Subscriber                          Signature of Authorized Signatory

Signature of Subscriber, if Joint                 Print Name and Title of Authorized Signatory

Mailing Address of                                 Residence or Business
Subscriber:                                        Address of Subscriber:

_____                           _____
              Street                                            Street

City           State       Zip Code              City           State       Zip Code

       Amount of Subscription:          $_____

       Method of Subscription:          đ Wire Transfer  đ Check

SUBSCRIPTION AMOUNT, SPECIAL POWER OF ATTORNEY AND SIGNATURE PAGE RECEIVED ON
, 19   AND SUBSCRIPTION ACCEPTED:

FIRST FRONTIER, L.P.
By:    Frontier Capital Management, LLC, General Partner

By:_____
       Mark Ostroff, Manager

**First Frontier, L.P**

**Subscription Document 2**

**Limited Partner's Signature Page**
**Of Partnership Agreement**

LIMITED PARTNER'S SIGNATURE PAGE

The undersigned, desiring to enter into the Limited Partnership Agreement, as amended (the "Agreement") of FIRST FRONTIER, L.P., a Delaware limited partnership (the "Partnership"), in or substantially in the form furnished to the undersigned with the Confidential Private Placement Memorandum, hereby agrees to all of the terms of the Agreement and agrees to be bound by the terms thereof and the undersigned hereby joins in the execution and swears to this Agreement and hereby authorizes this signature page to be attached thereto.

Witness the execution hereby by the undersigned as a Limited Partner of the Partnership and individually.

| | |
|---|---|
| _____ | _____ |
| Amount of Subscription | Print Name of Subscriber |
| Signature for Individual Subscribers: | Signature for Subscribers Other than Individuals: |
| | By: _____ |
| _____ | |
| Signature of Subscriber | Signature of Authorized Signatory |
| _____ | _____ |
| Signature of Subscriber, if Joint | Print Name and Title of Authorized Signatory |
| Residence or Business Address of Subscriber: | _____ |
| | Social Security or Employer Identification Number of Subscriber |
| _____ | |
| Street | |
| _____ | _____ |
| City        State        Zip Code | Date |

THE INTERESTS HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 AS AMENDED (THE "ACT") AND MAY NOT BE SOLD OR OTHERWISE TRANSFERRED (i) UNLESS THE SAME HAS BEEN INCLUDED IN AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT OR (ii) AN APPROPRIATE OPINION OF COUNSEL TO THE LIMITED PARTNERSHIP HAS BEEN OBTAINED STATING THAT REGISTRATION IS NOT REQUIRED. IN ADDITION, TRANSFER OR OTHER DISPOSITION OF THE INTERESTS IS RESTRICTED AS PROVIDED IN THE AGREEMENT.

# First Frontier, L.P.

## Subscription Document 3

## Special Power of Attorney

# FIRST FRONTIER, L.P.

<u>SPECIAL POWER OF ATTORNEY</u>

As used herein, the following capitalized terms have the following meanings:

| | |
|---|---|
| Principal: | The person, firm, corporation or other entity whose name appears at the end of this instrument. |
| Partnership: | The above-named limited partnership organized under the laws of the State of Delaware. |
| Partnership Agreement: | Limited Partnership Agreement of First Frontier, L.P., as amended, to be executed by all Partners. |
| General Partner: | Frontier Capital Management, LLC and its successors in such capacity. |
| Limited Partners: | The limited partners, from time to time, of the Partnership. |
| Attorney: | The manager of the General Partner or any successor General Partner. |

WHEREAS, the Principal has agreed to become a limited partner in the Partnership pursuant to the terms of the Partnership Agreement and each of the limited partners has agreed to appoint the Attorney as his attorney-in-fact for the purposes set forth herein,

NOW, THEREFORE, in consideration of the foregoing matters and intending to be legally bound hereby, the Principal hereby irrevocably constitutes and appoints the Attorney, with full power of substitution, the true and lawful attorney-in-fact of the Principal, in the Principal's name, place and stead, severally to make, execute, consent to, swear to, acknowledge, publish, record and file any and all of the following:

(1)    The certificate of limited partnership and, if necessary, amendments to the certificate of limited partnership of the Partnership to be filed in accordance with the laws of the State of Delaware and the applicable laws of any other state or jurisdiction in which the General Partner deems such filing to be necessary to give effect to the provisions of the Partnership Agreement and to preserve the character of the Partnership as a limited partnership;

(2)    Any other certificate or other instrument which may be required to be filed by the Partnership or the partners under the laws of any state or other jurisdiction, to the extent that the Attorney deems such filing necessary or desirable;

(3)    Any and all amendments or modifications of the instruments described in subparagraphs (1) and (2) hereof, including, without limitation, amendments to effect the addition, substitution or removal of one or more Limited Partners or the General Partner pursuant to the Partnership Agreement, <u>provided</u>, that each such amendment or modification evidences an amendment to the Partnership Agreement adopted in accordance with the terms thereof;

(4)    Any and all certificates and other instruments which may be required to effectuate the dissolution and termination of the Partnership pursuant to the provisions of the Partnership Agreement;

(5)    All such other instruments as the Attorney may deem necessary or desirable fully to carry out the provisions of the Partnership Agreement in accordance with its terms; and

(6)    Amendments to the Partnership Agreement

The Attorney shall have full power and authority to do and perform each and every act and thing whatsoever requisite and necessary in and about the foregoing as fully as the Principal might or could do if personally present and the Principal hereby ratifies and confirms all that said Attorney shall lawfully do or cause to be done by virtue hereof.

It is expressly understood and intended by the Principal that the Power of Attorney hereby granted is coupled with an interest and shall be irrevocable.  Said Power of Attorney shall survive the death or incapacity of the Principal or the assignment of the Principal's limited partnership interest or any part thereof.

The terms used herein, if not herein defined, shall have the meanings attributed to such terms in the Partnership Agreement.  All pronouns and any variations thereof used herein shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require.

IN WITNESS WHEREOF, the Principal has caused this instrument to be duly executed as of the       day
of            , 20                

_____
Print Name of Principal


Signature of Individual                          Signature of Principal
Principal:                                       Other Than Individual:


_____                 By:_____
Signature of Principal                           Signature of Authorized Signatory


_____                 _____
Signature of Principal, if Joint                 Print Name and Title of Authorized Signatory

Residence or Business Address
of Principal


_____
Street


_____
City              State     Zip Code


(Note that the Signature of each Signatory must be Notarized)


3

(Acknowledgment for Individual Principal(s) Acting Alone)

STATE OF       )
             ) ss.:
COUNTY OF       )

On this     day of       ; 20   , before me personally appeared       , to me known to be the person (or persons) described in and who executed the foregoing instrument, and acknowledged that he (or they) executed the same as his (or their) free act and deed.

_____
Notary Public

My Commission expires on:

(Acknowledgment for Partnership Principal)

STATE OF       )
             ) ss :
COUNTY OF       )

On this   day of     , 20  , before me personally came        , to me known, who being by me duly sworn, did depose and say that he is a partner in the firm of        , a partnership, and that he executed the foregoing instrument on behalf of said firm.

_____
Notary Public

My Commission expires on:

4

(Acknowledgment for Corporate or
Joint Stock Association Principal)

STATE OF                    )
                            ) ss :
COUNTY OF                   )

     On this        day of        , 20  , before me appeared                    , to me personally known, who,
being by me duly sworn (or affirmed), did say that he is the                    of                    ; that the seal affixed to
said instrument is the corporate seal of said corporation or association, and that said instrument was signed and
sealed in behalf of said corporation or association by authority of its board of directors or trustees, and the said
acknowledges the execution of the said instrument as the free act and deed of said corporation.

                                                                          Notary Public

                             My Commission expires on:

(Acknowledgment for Trust Principal)

STATE OF                    )
                            ) ss :
COUNTY OF                   )

     On this        day of        , 20  , before me personally appeared                    ,
known to me to be the trustee of the trust that executed the within instrument and acknowledged to me that such
trust executed the same.

                                                      Notary Public

                             My Commission expires on:

5

First Frontier, L.P.

Subscription Document 4

Questionnaire For Individual Subscriber

QUESTIONNAIRE FOR INDIVIDUAL SUBSCRIBER

First Frontier, L.P.
149 Fifth Avenue – 15th Floor
New York, NY 10010

Gentlemen:

      The information contained herein is being furnished to First Frontier, L.P. (the "Partnership") in order for the Partnership to determine whether the undersigned's subscription for a limited partnership interest (the "Interest") therein may be accepted pursuant to both Section 4(2) of the Securities Act of 1933, as amended (the "1933 Act") and Rule 506 of Regulation D promulgated thereunder ("Regulation D") and Section 3(c)(7) of the Investment Company Act of 1940, as amended (the "ICA"). The undersigned understands that (i) the Partnership will rely upon the following information, (ii) the Interest will not be registered under the 1933 Act in reliance upon the exemption from registration provided by Section 4(2) of the 1933 Act and Rule 506 of Regulation D, and (iii) this questionnaire is not an offer to sell nor the solicitation of an offer to buy any Interest, or any other securities, to the undersigned.

      **No subscription for an Interest will be accepted unless the undersigned is both an Accredited Investor (as defined in Regulation D) and a Qualified Purchaser(as defined in Section 2(a)(51)(A) of the ICA).**

I.   **Qualification As An Accredited Investor**. In order to qualify as an Accredited Investor, an individual must satisfy at least one of the following tests:

      **(Please check applicable boxes)**

      (i)    The individual has a net worth, or joint net worth with the individual's spouse, at the time of purchase in excess of $1,000,000;

              Yes   ☐   No  ☐

      (i)    The individual has had income in excess of $200,000 in each of the two most recent years or joint income with the individual's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same in the current year.

              Yes   ?   No  ?

**Qualification as a Qualified Purchaser**.  To be a Qualified Purchaser, the Subscriber must be a natural person who owns not less than $5,000,000 in Investments (as defined in Regulation 2a51-1(b) promulgated by the SEC under the ICA).  The Subscriber hereby represents and warrants to the Partnership and General Partner that the Subscriber owns Investments[1] of not less than $5,000,000, determined as follows:

Investments:                                                                                                Value[2]:
    Securities .................................................................................. $ _____
                                                                                                          (A)

> Include any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange related to foreign currency, or, in general, any interest or instrument commonly known as "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase any of the foregoing; and

> Do not include securities of an issuer that controls, is controlled by, or is under common control with the undersigned that owns such securities unless the issuer of such securities is an Investment Vehicle (as defined in Regulation 2a51-1(a)(3)), a Public Company (as defined in Regulation 2a51-1(a)(7)), or a company with shareholder's equity of not less than $50 million as reflected on the company's most recent financial statements, provided that the financial statements present information as of a date within 16 months of the date of this Agreement.

Real estate held for investment purposes .............................................. $ _____
                                                                                                          (B)

> Do not include real estate used by the undersigned or a related person[3] for personal purposes or as a place of business, or in connection with the conduct of the trade or business of the undersigned or related persons.  Real estate owned by an individual who is engaged primarily in the business of investing, trading or developing real estate in connection with such business may be deemed to be held for investment purposes.  Residential real estate shall not be deemed to be used for personal purposes if deductions for such real estate are not disallowed by Section 280A of the Internal Revenue Code of 1986, as amended.

---

[1]  1    You may include Investments held jointly with your spouse or investments in which you share with your spouse a community property or other similar shared ownership interest.

[2]  2    "Value" shall be the Investments' present fair market value or their cost less any amount that must be deducted.  In determining value, you must deduct from the fair market value or cost the amount of any outstanding indebtedness incurred to acquire or for the purpose of acquiring the Investment.  Value of each Investment and of total Investments shall be reported to the nearest $1000.

[3]  3    "Related person" means a person who is related to the undersigned as a sibling, spouse or former spouse, or is a direct lineal descendant or ancestor by birth or adoption of the undersigned, or is a spouse of such descendant or ancestor.

Commodity Interests held for investment purposes : ......................................................................................... $ _____
                                                                         (C)

> Include only the value of the initial margin or option premium deposited in connection with commodity futures contracts, options on commodity futures contracts, and options on physical commodities traded on or subject to the rules of any contract market designated for trading such transactions under the Commodity Exchange Act ("CEA") or any foreign board of trade or exchange contemplated in Part 30 of the rules under the CEA. A Commodity Interest owned by an individual who is engaged primarily in the business of investing, reinvesting, or trading in Commodity Interests in connection with such business may be deemed to be held for investment purposes.

Physical Commodities held for investment purposes. .......................................................... $ _____
                                                                         (D)

> Include any physical commodity with respect to which a Commodity Interest is traded on a market described above under "Commodity Interest". A Physical Commodity owned by an individual who is engaged primarily in the business of investing, reinvesting, or trading in Physical Commodities in connection with such business may be deemed to be held for investment purposes

Financial Contracts (to the extent not securities) entered into for investment purposes ...... $ _____
                                                                         (E)

> Include any individually negotiated contract, agreement, or option to buy, sell, lend, swap, or repurchase, or other similar individually negotiated transaction commonly entered into by participants in the financial markets; and which is (a) in respect of securities, commodities, currencies, interest, or other rates or measures of value, or any other financial or economic interest similar in purpose or function to any of the forgoing, and (b) entered into in response to a request from a counter party for a quotation, or is otherwise entered into and structured to accommodate the objectives of such counter party to such arrangement. A Financial Contract made by an individual who is engaged primarily in the business of investing, reinvesting, or trading in Financial Contracts in connection with such business may be deemed to be held for investment purposes.

Cash and cash equivalents (including Foreign currencies) held for investment purposes ......... $ _____
                                                                         (F)

> Include bank deposits, certificates of deposit, bankers acceptances and similar bank instruments held for investment purposes, and the net cash surrender value of an insurance policy.

Total Investments (sum of values of (A) through (F)) .................................................. $ _____

I.    <u>Personal Information</u>

(1)  Date of Birth:_____

(2) (i)    Principal Residence Address & Telephone Number:_____
_____

(ii)  Do you maintain a house or apartment in any other state?  If so, which states:_____
_____

(iii) In which states, if any, do you pay state income tax:_____
_____

(iv) In which state, if any, are you registered to vote:_____
_____

(v)  In which state, if any, do you hold a driver's license:_____

(3) Business or professional education and the degree(s) received are as follows:

       School          Degree          Year Received
_____
_____
_____

   (4)   Prior employment, positions or occupations during the past five years (and the inclusive dates of each)
are as follows:

   Employment, Position        Nature of
    or Occupation            Duties          From              To
_____
_____
_____

The undersigned has read the Partnership's Confidential Private Placement Memorandum dated January 18, 1999 and the undersigned has relied solely upon investigations made by the undersigned and the undersigned's attorney and accountant in making the decision to participate or not to participate in the placement. To the best of my knowledge and belief, the above information supplied herein is true and correct in all material respects

_____
Print Name(s) of Individual Subscriber(s)

_____
Date

_____
Individual Signature

_____
Individual Signature, if Joint

**First Frontier, L.P.**

**Subscription Document 5**

**Questionnaire for Partnership, Corporate, or Trust Subscriber**